D. D. RICHARDSON v. CITY OF MIAMI, A. E. FULLER, as City Manager of said City, R. C. WOODARD, as Superintendent of JAMES M. JACKSON MEMORIAL HOSPITAL, et al.

198 So. 51

En Banc

Opinion Filed September 27, 1940

Rehearing Denied October 25, 1940

*Peters & Kemp,* for Appellant;

*Lewis Twyman* and *J. W. Watson, Jr.,* for Appellees.

CHAPMAN, J.—In an amended bill of complaint filed in the Circuit Court of Dade County, Florida, it was alleged that the plaintiff, D. D. Richardson, was an osteopathic physician and engaged in the practice of his profession in the City of Miami and had completed a four-year course in an accredited Osteopathic School or College; was qualified and licensed to practice osteopathy, and had procured all licenses required by the charter and ordinances of the City of Miami and the State of Florida as an osteopathic physician; that the Jackson Memorial Hospital is located within the City of Miami and supported by the taxpayers of the City of Miami; and there are admitted into the Jackson Memorial Hospital charity patients and patients who pay fees usually charged for hospitalization.

The amended bill further alleges that Mrs. L. D. Baker entered the Jackson Memorial Hospital as a maternity case; that the plaintiff, as an osteopathic physician, had been engaged to treat and attend Mrs. L. D. Baker as a physician during her said confinement and according to the course of nature was to become a mother within a short time, and

that the patient was in urgent need of the professional services of the plaintiff.

The power to establish, maintain and operate Jackson Memorial Hospital was created by the Legislature in the enactment of Chapter 14234, Special Acts of 1929, Laws of Florida (which amended the charter Act of the City of Miami), and particularly Section 23a thereof. The city commissioners were authorized to create a board for the management of Jackson Memorial Hospital consisting of nine members and designated as "Board of Trustees of Jackson Memorial Hospital." The Board was granted power to establish by-laws, rules and regulations for the government of the hospital and, subject to the direct administration of the city manager, the Board of Trustees should operate, manage and control the hospital but should not be authorized to incur debts or contract for the expenditure of any moneys except pursuant to appropriations made by the Commissioners of the City of Miami.

The Board of Trustees of Jackson Memorial Hospital, on February 18, 1935, adopted the following resolution:

"WHEREAS, Section 23A of the Charter of the City of Miami, the Board of Trustees of the Jackson Memorial Hospital has the power to establish By-Laws, Rules and Regulations for its government, and WHEREAS, in pursuance of such power the said board deems it advisable to establish certain rules and regulations for the government of the Jackson Memorial Hospital.

"Now, THEREFORE, Be It Resolved, by the Board of Trustees of the Jackson Memorial Hospital, in regular session, February 18, 1935,

"SECTION 1. That the following by-laws, rules and regulations for the governing and operation of the Jackson Memorial Hospital be, and in same are hereby established.

"1.   That the Jackson Memorial Hospital should always maintain a standard equal to that as outlined as the minimum requirements of the American College of Surgeons.

"2.   That the qualifications for membership on the staff and those physicians permitted to practice therein, shall be based on ethics, education, experience, character and loyalty. They should be graduates of Class A Medical Schools with a degree of M. D. and eligible for membership in the Dade County Medical Association, and all other practitioners of any form of medicine except that as outlined above, are hereby excluded from the privilege of practicing medicine in the Jackson Memorial Hospital.

"3.   The by-laws governing the Jackson Memorial Hospital as passed by this Board of Trustees March 19, 1934, shall be used by the superintendent of this institution as his authority for carrying out the policies as outlined by this board."

Likewise Article II, Section 1 of the by-laws adopted by the Board of Trustees of Jackson Memorial Hospital with reference to the eligibility of physicians to practice in the institution is viz.:

"SECTION 1.   He must be a graduate of a Class A medical school, be legally licensed to practice in Florida by the State Board of Medical Examiners, upright and ethical in his dealings with his patients and fellow practitioners, and competent in the line of work he proposes to do."

It is also alleged that the adoption of a rule or by-law by the Board of Trustees of Jackson Memorial Hospital limiting the right to practice in said hospital and to attend and care for patients therein exclusively to members of the allopathic school of medicine, who are members of the Dade County Medical Association, forbids and attempts to bar the plaintiff as an osteopathic physician from practicing in

the Jackson Memorial Hospital and to attend and care for patients therein; that the laws of Florida grant to the plaintiff equal rights to practice his profession as a physician and surgeon of another school of medicine, coupled with the rights and privilege of treatment of cases in public institutions, inclusive of the Jackson Memorial Hospital; that the rule or by-law so adopted by the Board of Trustees of the Jackson Memorial Hospital is in violation of the laws of Florida, deprives plaintiff of his liberty without due process of law and the equal protection of the law, and that it is an unreasonable, arbitrary and discriminatory regulation promulgated for the purpose of excluding plaintiff and other osteopathic physicians from competing with allopathic physicians in the treatment of cases cared for in the Jackson Memorial Hospital.

The bill prays for an order restraining the Board of Trustees of the Jackson Memorial Hospital from preventing plaintiff entering and treating the aforesaid maternity case as an osteopathic physician and surgeon and from withholding the facilities, equipment and appliances of the hospital from the patient of the plaintiff, and on final hearing that it be decreed that the plaintiff as an osteopathic physician be accorded the usual and customary rights and privileges given to graduates of Class A medical schools for the degree of M. D. who are eligible for membership in the Dade County Medical Association; and that the Board of Trustees of Jackson Memorial Hospital be perpetually restrained from enforcing the aforesaid rule or by-law.

The lower court overruled and denied a motion to dismiss the amended bill of complaint and an answer was filed and testimony taken on the issues tendered, when the lower court entered an order dismissing the amended bill of complaint. From this order or decree an appeal has been perfected to this Court.

The theory of the appellant's case is that he is a licensed osteopath and has fully complied with all the laws of the State of Florida and the charter and ordinances of the City of Miami applicable to and regulating the practice of osteopathy; that the rule of Jackson Memorial Hospital barring and precluding osteopaths from the treatment of cases therein and forbidding osteopaths the same rights and privileges in said hospital as physicians and surgeons graduating from other schools of medicine is not only arbitrary and unreasonable but denies the plaintiff the equal protection of the laws, is discriminatory and the same is unconstitutional and void.

Counsel for appellant pose the question for decision, viz.:

"It is permissible for the Board of Trustees of Jackson Memorial Hospital, a public institution supported by general taxation in the City of Miami, to adopt a valid rule or regulation which excludes from the treatment of cases in such hospital osteopathic physicians and surgeons duly qualified and licensed under and pursuant to Section 3417, *et seq.,* of the Compiled General Laws?

It is the contention of the appellees that the Jackson Memorial Hospital is municipally owned and operated, supported by taxation, and has the charter power to adopt the rule and by-laws challenged on the record, and that the same are reasonable regulations, promoting efficiency and establishing high standards, and the policy of management and regulations do not violate the statutes or the Constitution.

Counsel for appellees pose two questions for a decision by this Court and are viz.:

"Question I. Has the governing board of a municipally owned public hospital in Florida the right to exclude osteopaths, that is, those practicing the art or profession of osteopathy from the medical staff of such hospital and prohibit

these osteopaths from the use of the hospital and its facilities in the treatment of patients while in the hospital?

"Question II. Has an osteopath a constitutional or statutory right to practice his profession in a municipally owned hospital when such osteopath does not come within and conform to the rules and regulations of such municipally owned and operated hospital?"

In the case of Hayman v. City of Galveston, 273 U. S. 414, 47 S. Ct. 363, 71 L. Ed. 714, a suit in equity was filed in the United States District Court of the Southern District of Texas in which it was alleged that Hayman, an osteopathic physician, a resident of Texas and licensed to practice medicine in the State of Texas, was excluded from practicing his profession in the John Sealy Hospital, maintained by the City of Galveston. The report of that case shows that the hospital board was given the exclusive right to prescribe rules and regulations for the management and conduct of the hospital and to control its internal government. It was asserted that the statutes and Constitution of Texas conferred upon the plaintiff Hayman the right to practice medicine and that the rules and regulations adopted by the Board of Managers of the John Sealy Hospital were arbitrary and discriminatory, violated the Fourteenth Amendment of the Federal Constitution, and denied the petitioner the equal protection of the law. The lower court dismissed the bill of complaint for want of equity and on appeal was affirmed by the United States Supreme Court, which said:

"* * * Appellant does not point to any law of the state denying his asserted constitutional right to practice medicine in the John Sealy Hospital. The bill did not set up that appellees purported to act under any statute of the state denying such right. Appellant in fact argues that the state

constitution and laws confer upon him the asserted right which is infringed by the action of the hospital board. * * *

"* * * But the only protection claimed here is that of appellant's privilege to practice his calling. However extensive that protection may be in other situations, it can not we think, be said that all licensed physicians have a constitutional right to practice their profession in a hospital maintained by a state or a political subdivision, the use of which is reserved for purposes of medical instruction. It is not incumbent on the state to maintain a hospital for the private practice of medicine. Compare Heim v. McCall, 239, U. S. 175. But it is argued that if some physicians are admitted to practice in the hospital all must be or there is a denial of the equal protection of the laws. Even assuming that the arbitrary exclusion of some physicians would have that legal consequence in the circumstances of the case, the selection complained of was based upon a classification not arbitrary or unreasonable on its face. Under the Texas constitution and statutes, anyone who shall 'offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method or to effect cures thereof' is a physician and may be admitted to practice within the state. Art. XVI, Sec. 31, Texas Constitution, Complete Tex. Stat. 1920, Art. 5739, 5741, 5745. We cannot say that a regulation excluding from the conduct of a hospital the devotees of some of the numerous systems or methods of treating diseases authorized to practice in Texas, is unreasonable or arbitrary. In the management of a hospital, quite apart from its use for educational purposes, some choice in methods of treatment would seem inevitable, and a selection based upon a classification having some basis in the exercise of the judgment of the state board whose action is challenged is not a denial of the equal protection of the laws. Compare Collins v. Texas, 223

U. S. 288; Watson v. Maryland, 218 U. S. 173; Crane v. Johnson, 242 U. S. 339; Jacobson v. Massachusetts, 197 U. S. 11."

See Harris v. Thomas, 217 S. W. 1068. The essential difference between osteopathy and allopathy is discussed and found under Annotations in 86 A. L. R., pages 624, et seq., and 626, et seq.

In the case of Newton v. Board of Com'rs of Weld County, 86 Colo. 446, 282 Pac. 1068, the plaintiff Newton, an osteopathic physician, brought suit to restrain the Board of Commissioners from adopting a resolution the effect of which was to bar Newton and other osteopathic physicians from practicing their profession in the two existing county hospitals which the Board, under a Colorado statute, was empowered to erect and maintain for the care and treatment of indigent persons and pay patients residing in Welds County. The board in the exercise of its authority under the Colorado statute, permitted or allowed allopathic and homeopathic physicians to practice therein but osteopathic physicians were barred therefrom. The lower court sustained a demurrer to the bill of complaint and dismissed the same. The order appealed from was affirmed by the Supreme Court of Colorado. The general objections assigned on appeal to the resolution of the Board of Commissioners of Weld County were: (a) the resolution bears no relation to or benefit to public health; (b) the hospital must be for the benefit of all and not for a limited class; (c) the resolution was arbitrary, unreasonable, discriminatory and oppressive; (d) the resolution was unconstitutional; (e) it creates a monopoly in the use of common property; (f) it deprives residents of Weld County of the right to employ physicians and surgeons when confined in the hospital. The Supreme Court of Colorado in denying the contention of Newton, said, in part:

"* * * the question for decision upon this record is whether the plaintiff, who is an osteopathic physician is deprived of his rights under the privileges and immunities clause of the state and federal constitutions, and the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. We are relieved of the necessity for any extended discussion because of the recent decision of the Supreme Court of the United States, the highest and controlling authority in such questions, in the case of Hayman v. Galveston, 273 U. S. 414, 47 S. Ct. 363, 71 L. Ed. 714. In all substantial particulars the case in hand is like the Hayman case. * * *

"* * * Our own Legislature provides for the licensing of those who desire to practice osteopathy as well as those who desire to practice allopathy and homeopathy. Provision has been made for granting of licenses to practitioners of the various systems or schools of medicine, but, as said by the Supreme Court of the United States in the Hayman case, the provision that preference shall not be given to any school of medicine is limited to the qualifications of those to be admitted to the practice of the profession in the state, and has nothing whatever to do with the qualifications of those who are to be allowed to practice in a public hospital or in an educational enterprise conducted by the state or by the counties or municipalities of the state.

"A physician has no constitutional or statutory right to practice his profession in a county hospital. The county board has complete supervision and control of county hospitals in this state. A regulation excluding from the county hospital, or the right to practice therein, the devotees of some of the numerous systems or methods of treating diseases authorized to practice the profession in Colorado is neither unreasonable nor arbitrary. Some choice of methods necessarily exists, and we cannot say that in the

case at bar the county board of commissioners did not have an adequate basis for its resolution. Neither can we say that this resolution was not justified upon the ground, which abundantly appears from this record, that, if the right to practice in the county hospitals is open to all the different schools of medicine, there would be constant jealousies and dissatisfaction between the rival schools of medicine which probably might or would greatly lessen the usefulness of the public hospital. The Court cannot substitute its judgment for that of the county board. * * *"

See State *ex rel.* Wolf v. La Cross Lutheran Hospital Ass'n, 181 Wis. 33, 193 N. W. 994; The People v. The Julia F. Burnham Hospital, 71 Newell 246 (Ill. App.) A municipal corporation may regulate and control a hospital maintained by it and in the exercise of that power it may exclude from practice within the hospital licensed physicians belonging to particular schools of medicine. See 43 Corpus Juris, par. 482, page 388.

Counsel for appellant cite Chapter 12287, Acts of 1927, Laws of Florida, which created a Board of Osteopathic Medical Examiners; provided for examination and licensing of osteopathic physicians and surgeons; defined osteopathic medicine and authorized and regulated the practice thereof on the part of osteopathic physicians and surgeons. It is contended that this Act disclosed the legislative judgment in favor of and granted to osteopathic physicians and surgeons not only the lawful right to practice osteopathic medicine but to practice the same in (all) public institutions of Florida, inclusive of the Jackson Memorial Hospital; that Section 13 of Chapter 12287, *supra,* coupled with the intention of the Legislature in the enactment of said chapter, grants to all osteopathic physicians licensed under the laws of Florida the right and privilege to not only practice in Florida, but have their patients granted all

the rights and privileges of the Jackson Memorial Hospital; and it is further contended that the general powers granted under Chapter 12287, *supra,* shall control and govern the operation and management of the hospital rather than the charter of the City of Miami. Several cases are cited to support this contention. Section 13 of Chapter 12287, *supra,* provides:

"Sec. 13. *Privileges and Obligations.* Osteopathic physicians and surgeons shall observe and be subject to all state and municipal regulations relative to reporting births and deaths and all matters pertaining to the public health, with equal rights and obligations as physicians of other schools of medicine, and such reports shall be accepted by the officers of the departments to which the same are made.

"Osteopathic physicians and surgeons licensed hereunder shall have the same rights as physicians and surgeons of other schools of medicine with respect to the treatment of cases or holding of offices in public institutions.

"It is the intent and purpose of this Act to grant to osteopathic physicians and surgeons the right to practice as taught and practiced in the standard colleges of osteopathy."

One of the rules of statutory construction is that where the legislative intent is clear as shown by the language used, the rules of construction are unnecessary. See Douglass, Inc., v. McRainey, 102 Fla. 1141, 137 So. 157. The intention of a statute is the law and should be determined and effectuated. See People's Bank v. Arbuckle, 82 Fla. 479, 90 So. 458. The evils to be corrected, the language of the Act, the title, history and purpose of the enactment should be considered in determining the legislative intent. See Curry v. Lehman, 55 Fla. 847, 47 So. 18.

We encounter but little, if any, difficulty in construing Chapter 12287. We find the intention of the Legislature

free from doubt and the object to be accomplished in its enactment is free from ambiguity. The expression "treatment of cases" is an authority, right and privilege granted to osteopathic physicians and surgeons, after completing the course of study prescribed by law and successfully passing the prescribed examination, and by the Board of Osteopathic Medical Examiners granted a license to practice as set forth in Section 11 of the Act.

The expression in the Act that osteopathic physicians and surgeons licensed thereunder shall have the same rights as physicians and surgeons of other schools of medicine with respect to the treatment of cases or "holding of offices in public institutions" cannot be construed to mean that patients of osteopathic physicians can be granted the rights and facilities of municipal hospitals, but the "holding of public offices in public institutions" may be construed to mean that osteopathic physicians are legally eligible to hold office in public institutions when appointed or elected. An examination of the title of the Act, as well as the body, considered in its entirety, fails to show a legislative intent to authorize osteopathic physicians and surgeons to practice in or have all the rights and facilities of a municipal hospital extended as a matter of law to their patients. The Act as a whole is applicable to osteopathic medicine; it provides for a course of study and a board whose duty it is to hold examinations and license those eligible to practice. We are unable to read into the Act the contentions here made on the part of counsel for appellant that osteopathic physicians can practice in and have the right and facilities of a municipal hospital extended to their patients.

The case at bar has been well presented, able arguments heard at the bar of this Court, splendid briefs filed, and the material points have been stressed or emphasized. We

have carefully considered the entire record and fail to find error. We think the decree of dismissal appealed from should be affirmed.

Affirmed.

WHITFIELD, P. J., and THOMAS, J., concur.

TERRELL, C. J., agrees to conclusion.

BROWN and BUFORD, J. J., dissent.