STATE OF MISSOURI ex rel. A. W. CHILCUTT, Relator, v. DEWEY P. THATCH, Special Judge, Judge of the 29th Judicial Circuit, Transferred to and sitting in Division 2, of the Circuit Court for Greene County, Missouri, by mandate of the Supreme Court, Respondent, No. 41312—221 S. W. (2d) 172.

Court en Banc, May 17, 1949.

*Frank B. Williams, J. Howard Hannah* and *William A. Wear* for relator.

124

*R. Jasper Smith, Keith V. Williams,* and *Lincoln, Lincoln, Whitlock & Haseltine* for H. D. Pickel, plaintiff, acting on behalf of respondent.

CONKLING, J.—This original action in prohibition presents to us the question of whether the Declaratory Judgment Act, Mo. R. S. A. § 1126 to 1140, inclusive, can be used after a general election by a candidate for county office who did not receive the highest number of votes in that general election, to attack for the first time an alleged irregularity in the *nomination* of his successful opponent.

On February 25, 1948 one Jess Galloway duly filed his declaration of candidacy for nomination by the Democratic Party at the state primary election held on August 3, 1948, as Associate County Judge from the second district in Greene County. The time for the filing of all declarations for candidacy for that primary expired on April 27, 1948. No other person filed to be nominated for that office by that party. On April 29, 1948 Jess Galloway died. Galloway's name therefore did not appear on the printed primary election ballot. At that primary election of August 3, 1948, H. D. Pickel was duly nominated as the Republican Candidate for that place. After the primary election the party county central committee certified the name of A. W. Chilcutt to the county clerk as the nominee of the Democratic Party for that place. The county clerk accepted that certification and printed Chilcutt's name upon the general election ballot. At the general election held on November 2, 1948 Chilcutt received 4275 votes and Pickel received 4209 votes. No election contest was filed.

On November 23, 1948 Pickel filed against Chilcutt and the county clerk an action for declaratory judgment praying also for injunction, in substance alleging that Chilcutt was not lawfully nominated because the Democratic Central Committee had no statutory power or authority to then nominate Chilcutt, or any other person; that therefore Chilcutt's name was unlawfully printed on the general election ballot; that Pickel was in law unopposed in said general election and that the county clerk had no authority to issue Chilcutt a certificate of election. No fraud was charged as to the election. That petition prayed a declaration of rights, duties and status of the parties; that the county clerk be enjoined from issuing to Chilcutt a certificate of election; and prayed a judgment of the court that Pickel be issued a certificate of election. The respondent special judge issued a temporary injunction enjoining the county clerk from certifying Chilcutt's name as the person elected to that office.

Thereafter, upon relator's petition therefor we issued our writ of prohibition ordering the respondent judge to refrain from all further proceeding therein, except to act, if he saw fit to do so, upon the temporary injunction he had theretofore issued. Service of our writ was waived, appearance of respondent was entered and the cause was submitted here upon the motion for judgment upon the pleadings, the briefs and oral argument. In the action below Pickel attacked Chilcutt's right to have his name on the general election ballot as a candidate only because of the manner and time of his nomination as a candidate for election.

 Even if it were conceded, which Chilcutt does not concede (contending the contrary), that Chilcutt was not entitled to have his name on the ballot, it has long been the law in Missouri that even though a majority of the voters voting at an election vote for one not

entitled to have his name printed on the ballot because of an irregularity in his nomination, the candidate who receives the next highest number of votes (less than a majority) in any event is not entitled to the office. To be entitled to the office a candidate must receive a majority or plurality, whichever the particular statute requires, of the entire number of votes cast. State ex rel. Atty. Genl. v. Vail, 53 Mo. 97, Sheridan v. City of St. Louis, 183 Mo. 25, 81 S. W. 1082, State ex rel. Neu v. Waechter, 332 Mo. 574, 58 S. W. (2d) 971, State ex inf. Atty. Genl. v. Cameron, 342 Mo. 830, 117 S. W. (2d) 1078, Mansur v. Morris, 355 Mo. 424, 196 S. W. (2d) 287. See also, 133 A. L. R. 333. As above noted, Pickel, not having received a majority of the votes at the general election, cannot be issued the certificate of election. The Circuit Court in any event would not have had any jurisdiction to order the county clerk to issue to Pickel a certificate of election.

We note from the record before us that after the primary election, and on August 17, 1948, the Democratic County Central Committee chose Chilcutt as the party nominee; and that on August 24, 1948, Chilcutt's name was duly certified by the party committee to the county clerk (and accepted by him) as such party nominee. Pickel filed no protest with the county clerk against such acceptance or the printing and inclusion of Chilcutt's name on the printed ballot for the general election. Instead of protesting such acceptance or the printing of Chilcutt's name on the general election ballot or taking any of the permissive steps allowed by statute (Mo. R. S. A. § 11599), Pickel carried his case to the electorate of the county, competed in the general election with Chilcutt, and lost by 66 votes. By his failure to so protest did Pickel waive any right he may have had to object now to any claimed irregularity in Chilcutt's nomination?

In Bowers v. Smith, 111 Mo. 45, 20 S. W. 101, 16 L. R. A. 754, it was contended that the county clerk wrongly printed upon the general election ballot, as candidates for certain county offices, the names of persons clearly not entitled to have their names printed thereon. We there considered what was then a new section of our election laws, R. S. Mo. 1889 § 4778 (Now Mo. R. S. A. § 11599). That statute provides: "*Whenever* it shall appear by affidavit that an error or omission has occurred in the publication of the names or description of candidates nominated for office, or in the printing of the ballots, the circuit court of any county, or the judge thereof in vacation, or if the circuit judge is then absent from the county, a judge of the county court, may, upon application by any elector, by order, require the clerk of the county court to correct such error, or to show cause why such error should not be corrected." (Italics ours).

In the Bowers case, we said: "The suffrage is regarded with jealous solicitude by a free people, and should be so viewed by those intrusted with the mighty power of guarding and vindicating their sovereign

rights. Such a construction of a law as would permit the disfranchisement of large bodies of voters, because of an error of a single official, should never be adopted where the language in question is fairly susceptible of any other. . . . Having regard to the spirit and purpose of the Missouri statute, and to the general principles governing the treatment of popular elections by the courts in this country, we think it should be held that where a candidate for public office causes no timely objection to be made before the election (as permitted by Section 4778) he should be regarded as having waived all objections that may exist to the presence on the official ballot of any names of nominees not properly entitled to be there."

In Mansur v. Morris, supra, we considered the power and duties of a county clerk, the "kind of errors" the county clerk is authorized by Sec. 11599 to correct, and whether such duty is discretionary or ministerial. The Mansur case opinion restates the holding of the Bowers case that the county clerk could have corrected the error complained of "if complaint had been made before the election".

The holding of the Bowers case, supra, was at length considered and approved in Nance v. Kearbey, 251 Mo. 374, 158 S. W. 629, where, as here, no pre-election steps were taken to object to the certification of the name either in form or sufficiency, no objections or exceptions were filed with the county clerk and, at no time prior to the election, were any proceedings filed in any court or before any judge to challenge the act of the county clerk in accepting the certificate or in printing the name on the ballot. Under these circumstances the Nance case ruled that even in an election contest the contestant could not raise the question of the invalidity of the contestee's nomination. In the Nance case Judge Lamm wrote the unanimous opinion of this court en banc, and, as to the mere irregularity of nomination there considered held that the post-election challenge "came too late after election and the event was determined, where, as in this case, no fraud of any sort is claimed in the election itself." See also, Armantrout v. Bohon, 349 Mo. 667, 162 S. W. (2d) 867, (8)(9)(10), 18 Am. Juris. Elections, p. 263, 29 C. J. S. Elections, 210. There is no reason to depart from the rule announced in the above named cases.

Here the objection raised by the petition below is one of irregularity in nomination only, the objection merely raising the manner and means of nomination or securing the place on the printed ballot. We are not here considering a case where the person who received the majority of the votes cast had some constitutional or statutory disqualification such as age, residence, experience, the number of years as a qualified voter of Missouri, or otherwise. Such character of disqualification as might subject the winner, if holding the office to challenge or removal by quo warranto would present another situation.

Therefore, as no ante-election steps were taken by Pickel, or by any one, to do anything permitted by Sec. 11599, any error or omission

of the county clerk in that respect, if such there be, has been waived. In the Bowers case, supra, the writer of our opinion wisely said that elections cannot be judicially held void and the unwary voter subjected "to the risk of losing the right of suffrage every time an error in admitting a name to the official ballot is made by an officer passing upon the regularity of nominating papers, when no objection to his ruling is made before election".

Under these circumstances the respondent judge had no jurisdiction to enter any order declaring that Pickel is entitled to receive, or ordering that he be issued, a certificate of election. Respondent likewise had no jurisdiction to issue the temporary injunction against the county clerk. That injunction is dissolved. No steps having been taken before the general election to do any of the things permitted by Sec. 11599, all objection to the method and manner of his nomination and to printing of Chilcutt's name on the general election ballot was waived.

 We must next consider the question whether the petition in the declaratory judgment action now pending before the respondent judge presents a real controversy which is justiciable in character? It is our holding that it did not.

No justiciable controversy exists and no justiciable question is presented unless an actual controversy exists between persons whose interests are adverse in fact. Plaintiff must have a *legally protectable interest* at stake and the question presented must be appropriate and ready for judicial decision. Borchard, Declaratory Judgments, p. 40, City of Joplin v. Jasper County, 349 Mo. 441, 161 S. W. (2d) 411, Odom v. Langston, 355 Mo. 115, 195 S. W. (2d) 466. Plaintiff's petition must present a real and substantial controversy admitting of *specific relief* through a decree of a *conclusive character*, as distinguished from a decree which is merely advisory as to the state of the law upon purely hypothetical facts. Aetna Life Ins. Co. v. Haworth, 300 U. S. 227, 57 S. Ct. 461, Anderson, Declaratory Judgments, p. 27, 16 Am. Juris., Sec. 46. Actions are merely advisory when there is an insufficient interest in either plaintiff or defendant to justify judicial determination, i. e., where the judgment sought would not constitute a specific relief to one party or the other. They are merely advisory when the judgment would not settle actual rights. If actual rights cannot be settled the decree would be a pronouncement of only academic interest. Plaintiff must have a legal interest in the relief he seeks. The question is justiciable only where the judgment will declare a fixed legal right and accomplish a useful purpose. Plaintiff must present a state of facts from which he has present legal rights against those he names as defendants with respect to which he may be entitled to some *consequential relief* immediate or prospective. If it appears plaintiff can have no relief against defendant, defendant should not be forced into litigation which can have no possible final

130

result in favor of plaintiff. 1 C. J. S. Actions, p. 1031. See cases collected in 23 Words and Phrases, Perm. Ed. 473, and in 2 Wests Mo. Digest, Action, Key 6.

We rule therefore that under the instant circumstances plaintiff's petition below does not present a controversy which is real and justiciable in character. Plaintiff below is in no position to derive any benefit therefrom. He cannot have the office for he did not receive a majority of the votes. An incumbent may hold office as an incumbent until his successor is elected and qualified. But since Pickel permitted the time between the certification of Chilcutt's name to the county clerk on August 24, 1948, and the election on November 2, 1948 to go by without exercising his right to do any of the permissible things granted by Sec. 11599, he thereby and thereupon lost his right to question the validity of Chilcutt's nomination.

It follows therefore that at the time plaintiff's petition was filed, and now, the matters sought to be raised therein were abstract and academic and were not the proper subject of any action whatever by a court of justice.

It clearly appears that the respondent judge had no jurisdiction to enter any order whatever or to take any action in the declaratory judgment suit, other than to dismiss the same. The temporary injunction order which respondent made therein is dissolved. Our provisional rule in prohibition heretofore awarded is made absolute. It is so ordered. All concur.