C. R. STRIBLING, C. M. CLAY, CHARLES A. SMITH, W. G. STALEY, AND W. B. WATERS, CONSTITUTING THE BOARD OF TRUSTEES OF THE AUDRAIN COUNTY HOSPITAL, APPELLANTS, v. J. FRANK JOLLEY, G. P. KALLENBACH, C. L. GARCIA, FRED GRIFFIN, HARRY F. O'BRIEN, HOWARD E. JOSLYN, R. S. WILLIAMS, THOMAS L. DWYER, H. J. ECTOR, P. E. COIL, J. F. HARRISON, W. K. McCALL, R. LEE ALFORD, W. W. BLAND, S. C. ADAMS, ERNEST S. GANTT, AND MISSOURI STATE MEDICAL ASSOCIATION, A CORPORATION, APPELLANTS; H. I. NESHEIM, K. D. SWAN, H. A. GORRELL, R. W. VAN WYNGARDEN, HELEN A. ROHWEDER, JOHN A. OWENS, J. H. DOUGHERTY, R. L. MARSHALL, R. B. BAIZE, AND MISSOURI OSTEOPATHIC ASSOCIATION, A CORPORATION, RESPONDENTS.—253 S.W. 2d 519.

St. Louis Court of Appeals. Opinion filed December 16, 1952.

Motion of Appellants for a rehearing, or in the alternative, for transfer to Supreme Court overruled January 16, 1953.

Application of Appellants to the Supreme Court to transfer cause from St. Louis Court of Appeals overruled March 9, 1953.

*George P. Adams* for appellants C. R. Stribling, et al.

*Bradley & Noble, John H. Bradley, John W. Noble* and *Lawrence L. Bradley,* for Appellants J. Frank Jolley, et al.

1126

*Roy D. Williams, Waldo P. Edwards, Clay C. Rogers, George Schwegler, Jr., Carl E. Enggas, Walter A. Raymond, Rogers, Field & Gentry,* and *Watson, Ess, Whittaker, Marshall & Enggas,* Attorneys for Respondents H. I. Neisham, et al.

1130

WOLFE, C.—This is an action for a declaratory judgment, brought by the trustees of the Audrain County Hospital. They adopted a rule excluding doctors of osteopathy from practicing in the hospital and they now seek to determine whether or not that rule is in violation of the laws of the State of Missouri. The State Medical Association, the Missouri Osteopathic Association, and the medical and osteopathic physicians of Audrain County were joined as defendants.

The trial court held that the rule was illegal and further found that osteopathic physicians had a right under the laws of Missouri not only to use the hospital but to administer drugs and perform operative surgery with instruments.

An appeal was taken by the trustees of the hospital and the medical physicians defendants. They appealed to the Supreme Court upon the theory that a constitutional question had been raised. It was held there that no constitutional question was properly in the case, and since that court, therefore, was without jurisdiction of the appeal, the cause was transferred to this court. Stribling v. Jolley, Mo. Sup., 245 S.W. 2d 885.

It appears from the evidence that osteopathic physicians had always been permitted to practice in and to take their patients to the public hospital in Audrain County up to the year 1940, at which time the

rule excluding them from practicing in the hospital was passed by the board of trustees. Because of the rule the trustees were publicly criticised and a bond issue for increasing the hospital facilities was openly opposed. This prompted the trustees to bring the present action, to determine the legal force and effect of the statute relating to county hospitals, which is Section 205.300, R. S. Mo. 1949, V.A.M.S., and is as follows:

"1. In the management of such public hospital no discrimination shall be made against practitioners of any school of medicine recognized by the laws of Missouri, and all such legal practitioners shall have equal privileges in treating patients in said hospital.

"2. The patient shall have the absolute right to employ at his or her own expense his or her own physician, and when acting for any patient in such hospital the physician employed by such patient shall have exclusive charge of the care and treatment of such patient, and nurses therein shall as to such patient be subject to the directions of such physician; subject always to such general rules and regulations as shall be established by the board of trustees under the provisions of sections 205.160 to 205.340."

As stated, the medical physicians were joined as a class and in their answer they alleged that the osteopathic physicians were engaged in the general practice of medicine and surgery and that such practice was contrary to the law. They sought to uphold the rule excluding osteopaths and asked that the court define "the scope, limit and extent of the practice of osteopathy under the laws of Missouri". The osteopathic physicians in their answer to the petition alleged that the rule passed was in violation of the laws of Missouri, and in answer to the answer of the medical physicians they stated "that they did in 1940, and have, and will, administer antidotes, narocotics, emergency palliatives, opiates, anesthetics, and antiseptics, and did at such times perform operations with instruments"; and they deny that such practice is in violation of any law.

It will be seen that the petition had only to do with the right of the osteopathic physicians to practice their profession in the Audrain County Hospital, but the medical physicians sought to extend the scope of the case by their answer, requesting of the court a decree defining and limiting the general practice of osteopathy.

Much of the evidence was devoted to the issue that the defendants thus sought to engraft upon the plaintiffs' cause. Such evidence revealed that the school of medicine known as osteopathy had its origin in Missouri with the founding of the American School of Osteopathy in 1894. The corporate constitution of that school in part provided:

"The object of this Corporation is to establish a College of Osteopathy, the design of which is to improve our present system

of Surgery Obstetrics and treatment of diseases generally and place the same on a more rational and scientific basis and to impart information to the medical profession and to grant and confer such honors and degrees as are usually granted and conferred by reputable Medical Colleges, to issue diplomas in testimony of the same to all students graduating from said School under the seal of the Corporation with the signature of each member of the faculty and of the President of the College.''

The college from its beginning taught as its principal precept that a perfectly adjusted body produced a plentiful supply of blood to all parts of it, and that when the body became sick or diseased it could generally be cured by manipulation that brought blood in sufficient quantity to the affected parts. In addition to an emphasis on anatomy and the manipulative therapy mentioned, the students were taught the use of drugs, obstetrics, and minor surgery.

The college enlarged upon its instruction as time passed and many of its graduates have for years unquestionably engaged in the practice of general surgery, the administration of drugs, and manipulation. At the present time nearly 21 per cent of the practicing physicians in Missouri are osteopaths, most of whom are in the rural areas where about one-third of all of the practitioners are osteopathic physicians. There are fifty-one osteopathic hospitals in the state with an estimated replacement value of $13,710,000.

The first statutory recognition of osteopathy was in 1897. At that time the statutes of Missouri (Mo. R. S. 1889, Art. 1, Chap. 110) provided that the practice of medicine without a license was illegal, but the Act of 1897 excluded osteopathic physicians from the statute that regulated the practice of medicine. This exclusion has been carried down without material change to Mo. R. S. 1949, Section 337.010, V.A.M.S., which provides:

''The system, method or science of treating diseases of the human body, commonly known as osteopathy, and as taught and practiced by the American school of osteopathy of Kirksville, Missouri, is hereby declared not to be the practice of medicine and surgery within the meaning of sections 334.010 to 334.180 and not subject to the provisions of said chapter.''

In 1903 (Laws of 1903, p. 248) a board of osteopathic examination was set up and the law creating it is the present Mo. R. S. 1949, Section 337.020, V.A.M.S. In the various enactments of this statute there were changes in the educational requirements of the applicants for a certificate to practice, and the act now differs from the original in that the applicants are examined upon the subject of surgery, whereas in the Act of 1903 the words ''minor surgery'' were used. It should be noted that this law from its first enactment to the present date requires the person holding a certificate to practice shall record it in the same manner as graduates from any other ''school of

medicine''. Another statute in which osteopathy is touched upon is the Narcotic Drug Act. Mo. R. S. 1949, Sections 195.010 to 195.210. This covers the use and sale of narcotic drugs and provides that they may be used in osteopathic hospitals.

It seems apparent from the statutes mentioned that the Legislature, when it passed the Act of 1897 excluding the practice of osteopathy from the medical practice Act, considered osteopathy something other than the general practice of medicine and surgery as it was then known. It is also true that osteopathy was considered a thing *sui generis* when the Legislature passed the act creating the Board of Osteopathic Registration and Examination. Grainger v. Still, 187 Mo. 197, 85 S.W. 1114. Yet, as appellants concede, ''It is clear that the 1937 Narcotic Act assumes that osteopaths may use drugs''.

All of the foregoing stated facts leave us with a situation wherein the medical and osteopathic physicians (though differing in training and under different licensing and governing statutes) practice side by side and in many cases use all of the same methods of healing except that the osteopaths place greater reliance upon manipulation as an effective therapy.

By reason of this, a very understandable confusion exists in both schools as to whether or not there are legal limits to the practice of osteopathy beyond which its practitioners may not go. This is the third time that the aid of the courts has been sought to determine the question. Previous cases doubtlessly intended to accomplish that result, were State v. Carlstrom, 224 Mo. App. 439, 28 S.W. 2d 691, and State v. Reisman, 225 Mo. App. 637, 37 S.W. 2d 675. These were both prosecutions against osteopaths in which they were charged with the illegal practice of medicine by having prescribed drugs. In both cases the defendants filed a plea in abatement in which they admitted prescribing drugs and averred that they were legally authorized to do so. In both cases the State demurred to this plea. The demurrer in effect admitted the truth of the allegations in the plea in abatement and thus left no issue for trial and the charges were dismissed without any decision by the courts on what constitutes the practice of medicine or osteopathy. For reasons that are subsequently stated, their efforts to resolve the question in the instant case must be equally fruitless, for again it is not properly before the court.

The difficulty of presenting to the courts a case wherein a line may be drawn between the two schools of medicine, if one is to be drawn, arises in part from the fact that it is basically a matter for the Legislature. As stated in the case of State v. Smith, 233 Mo. 242, l.c. 268, 135 S. W. 465: ''It is unnecessary to refer further to repeated declarations of this court to the effect that the Legislature has the power to regulate, in such manner as it may think proper and wise, callings that are related to the public health.'' It is always better

to seek the correction of a situation caused by confusing or conflicting statutes, in the Legislature, where the power to regulate lies, rather than in the courts which cannot change the statutes but only interpret and enforce them.

Wholly apart from that, however, is the fact that this suit was instituted to determine the validity of the rule excluding osteopaths from hospitals and the controversy between the two schools of medicine has been improperly injected into the case by their respective answers. It is in fact very doubtful that the medical physicians should have been joined in this suit, for Mo. R.S. 1949, Section 527.110, V.A.M.S., states:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings."

The rule excluding osteopaths prejudiced no rights of the medical physicians. Hence there is a serious question as to whether or not they should have been joined as defendants; but we need not pass upon this for if they were properly joined they stated no cause for relief in their answer.

It may certainly be said that the declaratory judgment act affords no greater scope of relief to the parties defendant than it does to the parties plaintiff. Our Supreme Court stated in State ex rel. Chilcutt v. Thatch, 359 Mo. 122, 221 S.W. 2d 172, l.c. 176:

"Plaintiff must have a *legally protectable interest* at stake and the question presented must be appropriate and ready for judicial decision. Borchard, Declaratory Judgments, p. 40; City of Joplin v. Jasper County, 349 Mo. 441, 161 S.W. 2d 411; Odom v. Langston, 355 Mo. 115, 195 S.W. 2d 466. Plaintiff's petition must present a real and substantial controversy admitting of *specific relief* through a decree of a *conclusive character*, as distinguished from a decree which is merely advisory as to the state of the law upon purely hypothetical facts, Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Anderson, Declaratory Judgments, p. 27. 16 Am. Juris., Sec. 46."

And again it was stated in City of Camdenton v. Show-Me Power Corp., 361 Mo. 790, 237 S.W. 2d 94, l.c. 96:

"There must be a sufficiently complete state of facts presenting issues ripe for determination before a court may declare the law. 'A mere difference of opinion or disagreement or argument on a legal question affords inadequate ground for invoking the judicial power.' Appellant also cites State ex rel. Chilcutt v. Thatch, 359 Mo. 122, 221 S. W. 2d 172, which holds that the petition must present a real and substantial controversy admitting of specific relief through a decree of a conclusive character."

The answer of the medical physicians stated nothing more than a disagreement with the osteopaths on a legal question, for it disclosed no "legally protectable interest at stake". Since the issues raised by it were not related to those raised by the petition, they presented nothing that may be considered in this action.

The Supreme Court, in transferring the case to us, said: "The ultimate question to be decided is: Does the rule of February 27, 1940, excluding osteopaths from practicing in the Audrain County Hospital, contravene the provisions of the above quoted statute?" The court referred to Mo. R.S. 1949, Section 205.300, V.A.M.S., which we have set out above. For the reasons we have stated, this "ultimate question" is the only one before us.

What did the Legislature mean when it said that no discrimination shall be made against practitioners of any school of medicine and then went on to say that the patient shall have the absolute right to employ his or her own physician? The trustees and medical defendants maintain that the rule excluding osteopaths is not in violation of this section because the trustees are allowed to adopt rules not inconsistent with the general law, and that osteopathy is not a school of medicine within the meaning of the statute.

We are cited to Hayman v. City of Galveston, 273 U.S. 414, wherein the Supreme Court of the United States disagreed with the contention of an osteopathic physician in Texas, who was asserting a constitutional right to practice in a municipal hospital. No statute such as the one we have under consideration was involved in that case. The same is true of the case of Newton v. Board of Commissioners of Weld County, Colo., 282 P. 1068, also cited. This case was decided upon the authority of Hayman v. City of Galveston, supra, and the court said, "In all substantial particulars the case in hand is like the Hayman case". We are therefore without authority in support of the contention raised.

One of the meanings of the word "school" is: "The standards, doctrines, or principles relating to a profession or occupation in a given locality; the standards or theories relating to the pathology, etiology, or treatment of human ailments." C.J.S., Vol. 78, p. 590.

Webster's New International Dictionary, Merriam's Second Edition, gives as a definition of medicine: "a. The science and art dealing with the prevention, cure, or alleviation of disease. b. In a narrower sense, that part of the science and art of restoring and preserving health which is the province of the physician as distinguished from the surgeon and obstetrician." The meaning therefore of the words "school of medicine" does not, as contended, limit the practice in public hospitals to those who administer drugs, for, if that were true, a practitioner of any school who confined his practice to surgery could not use the institutions.

Our courts have used the phrase "school of medicine" in referring to osteopathy. Grainger v. Still, 187 Mo. 197, 85 S.W. 1114; Cazzell v.

Schofield, 319 Mo. 1169, 8 S.W.2d 580; Mann v. Grim-Smith Hospital and Clinic, 347 Mo. 348, 147 S.W.2d 606. Thus it seems that the words are generally so used and understood. Nor can this common use of the words be altered by the act excluding osteopaths from the medical practice act. That was discussed in Atkinson v. School of Osteopathy, 240 Mo. 338, 144 S.W. 816, wherein the court said:

"It is true that section 8537 provides that osteopathy is 'not to be the practice of medicine and surgery within the meaning of article 1 of this chapter, and not subject to the provisions of said article;' but the purpose so expressed is simply to segregate this particular system from those for the regulation of which article 1 was enacted."

From this it seems obvious that the Legislature, in prohibiting the boards of county hospitals from discriminating against any school of medicine, used language that included osteopathic physicians.

The matter need not, however, rest upon that alone, for it will be noted that there is a further provision in the second paragraph of the statute providing that the patient in the hospital has the absolute right to the "physician" of his choice. There is no qualification as to the school of medicine to which the physician may belong and the Legislature has considered and called doctors of osteopathy "physicians" in the act regulating their practice. Mo. R.S. 1949, Sections 337.020, 337.040 and 337.070.

The decree appealed from held that the rule adopted by the trustees was discriminatory and also held that osteopathic physicians and surgeons were practitioners of a school of medicine, within the meaning of the statute, and entitled to practice in public hospitals, subject to reasonable rules and regulations of the board of trustees. To this extent the decree was proper, but it then broadly set out what the court held to be the practice of osteopathy under the law. As we have stated at some length, the question of what an osteopath may do and the limits, if any, to his profession were not properly brought before the court and it was error for the learned trial judge to embrace a determination of those questions within the decree. By this, of course, we do not mean that we agree or disagree with the holdings of that portion of the decree, but simply that the questions were not present for the court to act upon.

It is, therefore, the recommendation of the Commissioner that the decree be affirmed in part and reversed in part, and that we affirm and adopt the first three paragraphs of the decree of the trial court and adjudge and declare the law to be as follows:

1. The rule adopted by the plaintiff Board of Trustees of the Audrain County Hospital dated February 27, 1940 excluding doctors of osteopathy from practicing in the Audrain County Hospital is illegal, unreasonable, discriminatory, void and of no force and effect.

2. Osteopathic physicians and surgeons are practitioners of a school of medicine and are physicians and surgeons within the meaning of the Missouri statutes regulating their practice rights.

3. Osteopathic physicians and surgeons are entitled to take their patients to the Audrain County Hospital for treatment, subject to reasonable rules and regulations promulgated by the Board of Trustees of this Hospital.

PER CURIAM:—The foregoing opinion of Wolfe, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed in part and reversed in part, and the cause is remanded with directions to enter a decree in accordance with the recommendations of the Commissioner. *Bennick, P. J.,* and *Anderson,* and *LaDriere, JJ.,* concur.