340 P.2d 1069

Dr. D. R. MUNROE and Dr. Marion B. Munroe, Plaintiffs-Appellants,

v.

J. Embry WALL, Gordon K. Greaves, T. E. Mears, Jr., Billy Schumpert and L. D. Hays, as Members of the Board of Trustees of the Roosevelt General Hospital, Defendants-Appellees.

No. 6496.

Supreme Court of New Mexico.

June 26, 1959.

C. Melvin Neal, Hobbs, Hartley, Buzzard & Patton, Clovis, for appellants.

Frank B. Zinn, Atty. Gen., Robert F. Pyatt, Fred M. Calkins, Jr., Asst. Attys. Gen., James C. Compton, Dist. Atty., Portales, for appellees.

CARMODY, Justice.

Appellants seek a reversal of the action of the trial court in dismissing their complaint in a case filed under the Declaratory Judgment Act, 1953 Comp. § 22–6–1 et seq., seeking a judicial declaration of the legality of a regulation promulgated by the Board of Trustees of the Roosevelt General Hospital, appellees here.

The trial court sustained appellees' motion to dismiss, on the ground that the complaint failed to state a cause of action. The findings of fact made by the trial court were as follows:

"1. The parties to this action are all residents of Roosevelt County, New Mexico.

"2. The defendants constitute the governing body of the Roosevelt General Hospital, Portales, New Mexico, a public county hospital validly organized and operating under the laws of the State of New Mexico.

"3. Plaintiffs are qualified Doctors of Osteopathy, licensed to practice medicine under the laws of the State of New Mexico, and are presently practicing as such.

"4. Defendants, in their official capacity as the governing body of the Roosevelt General Hospital, have enacted a certain hospital regulation, as follows:

" 'The Board of Trustees shall appoint a Medical Staff composed of

physicians who are graduates of medical schools approved by the American Medical Association, and shall see that they are organized into a responsible administrative unit.'

"5. Plaintiffs are not graduates of a medical school approved by the American Medical Association. Pursuant to the terms of the regulation quoted above, plaintiffs have been denied membership on the medical staff of such hospital for such reason and have thereby also been denied the use of the professional facilities of the hospital by defendants."

There is no consitutional question involved in the case, the appellants having specifically stated that they are not contending that any constitutional right has been denied them, this question having been determined by the Supreme Court of the United States adversely to the position taken by appellants here, Hayman v. City of Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714. The sole and only question is, therefore, one of statutory construction. The statute, being § 67–8–12, 1953 Comp., 1957 Supp., provides as follows:

"Osteopathic physicians and surgeons licensed hereunder shall have equal rights, privileges, and obligations in the handling of cases and rendering of medical services in all branches and phases of the healing arts as are accorded or permitted physicians and surgeons of other schools of practice; that such general rights shall extend to the rendering of medical services under the provisions of public health, welfare, assistance laws and other fields of public medicine, and no regulations shall be made with respect thereto limiting, excluding or discriminating against osteopathic physicians and surgeons.

"Osteopathic physicians and surgeons shall also have the right to register under the laws of the United States governing narcotics. Osteopathic physicians shall observe and be subject to all state and municipal regulations relative to the reporting of births and deaths and all matters pertaining to the public health with equal rights and obligations as physicians and surgeons of other schools of medicine, and such reports shall be accepted by the officers of the departments to which they are made.

"(a) The rights, benefits and obligations conferred by this act upon licensed osteopathic physicians and surgeons shall not be construed as taking from the governing authorities of all state, county and municipal hospitals, or from any publicly supported hospital either in whole or in part the complete control and management of such hospitals with power to make

rules and regulations for the operation of such hospitals and to determine who will be on the staff of such hospitals; nor shall this act be construed as taking from the governing authorities of any hospital or other institution owned, operated, or maintained by any religious, industrial or fraternal group or organization the absolute right of complete control and management of such hospitals and institutions."

Appellants urge that this law requires the governing board of a public hospital to afford to osteopathic surgeons and physicians the same treatment as is given to doctors of medicine who are graduates of American Medical Association approved colleges or, in other words, that the legislature intended to place osteopathic physicians on the same footing as medical doctors in every respect.

■ One guide in the construction of a statute that has been found to be most useful to the courts is the consideration of the history and prior condition of a particular law. Chapter 117, § 12, Session Laws of 1933, provided generally that osteopaths were to be accorded the same general rights as medical doctors in the handling of cases. Chapter 79, § 4, Session Laws of 1945, contained a similar provision, but there was added to the same "* * * no plan, program, or other matter * *" could be approved by public officials if it discriminated against osteopaths. Chapter 117, § 1, Session Laws of 1947, carried forward the provisions of the 1945 Act and added a new proviso which read as follows:

"Provided, however, if the presence of any osteopathic physician on the staff of any tax supported hospital will under federal law or regulation prevent such hospital from receiving any federal funds the governing authority of such hospital will have the power to remove all osteopathic physicians from the staff of such hospital."

The present law above quoted, which was enacted as Chapter 42, § 1, Session Laws of 1955, contains the "equal rights in regard to handling cases," but the anti-discrimination provision and the above proviso were eliminated and the above subsection (a) was added. What the legislative reasons were in adding this section, we of course do not know, but all of the statutes mentioned relate solely to the practice of osteopathy and nowhere else in these statutes are public hospitals mentioned. Actually, the operation of county hospitals is dealt with in an entirely different section of our law, being § 15–48–10, 1953 Comp., 1957 Supp., which gives to the trustees full authority to manage and operate the hospital.

■ Therefore, it would appear to us that, based upon the history of the osteopathic statutes, a fair analysis of the

statute in question would be that the first two paragraphs thereof place osteopaths on equal footing with medical doctors, but that the third paragraph reserves to the governing boards of public hospitals full control over the making of regulations to determine who should be on the staff, irrespective of the so-called equal rights given to osteopaths. If it were otherwise, there would have been no reason for the elimination of the "anti-discrimination" and "permissive removal from the staff" provisions of the 1947 law.

Appellants also contend that the title to the act in question should give an indication as to the extent of appellants' rights. The title is as follows:

"An act relating to osteopathic physicians and the definition of osteopathy; their standards of professional education and rights to practice in state, county, municipal or joint county-municipal hospitals and amending section 67–8–1, 1953 Compilation * * *."

However, in our view, the words "rights to practice in state, county, municipal or joint county-municipal hospitals" do not enlarge on the rights granted to the appellants and give no indication as to how extensive the same are, when they may be exercised, or under what conditions.

Actually, it would seem that the statute is plain and unambiguous and should not be in need of interpretation. However, appellants contend that the third paragraph should mean that the hospital board has a right to determine on an individual basis who may be on the staff, but that the statute as read together does not give such board the power to discriminate against an entire group, such as those who follow the osteopathic practice.

There are three cases in which very similar problems have been raised, even though in addition to the instant problem constitutional questions were raised therein. The first of these is Hayman v. City of Galveston, supra, in which the Supreme Court of the United States held that a regulation excluding osteopaths from a municipal hospital was not unconstitutional, the court holding that the regulation was reasonable in a constitutional sense. The following quotations from the Galveston case are pertinent to the instant case:

"It is not incumbent on the state to maintain a hospital for the private practice of medicine.

\*   \*   \*   \*   \*   \*

"We cannot say that a regulation excluding from the conduct of a hospital the devotees of some of the numerous systems or methods of treating diseases authorized to practice in Texas, is unreasonable or arbitrary. In the management of a hospital, quite apart from its use for educational pur-

poses, some choice in methods of treatment would seem inevitable, and a selection based upon a classification having some basis in the exercise of the judgment of the state board whose action is challenged is not a denial of the equal protection of the laws." [273 U.S. 414, 47 S.Ct. 364.]

In Newton v. Board of Com'rs of Weld County, 1929, 86 Colo. 446, 282 P. 1068, the Supreme Court of Colorado held that the statute gave to the county board complete supervision and control of the county hospital and that a regulation excluding osteopaths was neither unreasonable nor arbitrary. That court, at page 1071 of 282 P., stated the following:

"A physician has no constitutional or statutory right to practice his profession in a county hospital. The county board has complete supervision and control of county hospitals in this state. A regulation excluding from the county hospital, or the right to practice therein, the devotees of some of the numerous systems or methods of treating diseases authorized to practice the profession in Colorado is neither unreasonable nor arbitrary. Some choice of methods necessarily exists, and we cannot say that in the case at bar the county board of commissioners did not have an adequate basis for its resolution. Neither can we say that this resolution was not justi-

fied upon the ground; which abundantly appears from this record, that, if the right to practice in the county hospitals is open to all the different schools of medicine, there would be constant jealousies and dissatisfaction between the rival schools of medicine which probably might or would greatly lessen the usefulness of the public hospital. The court cannot substitute its judgment for that of the county board. Not being contrary to any provision of the federal or state Constitution or of the laws of the state, its determination cannot be set aside by us. The judgment is therefore affirmed."

The third case, which is actually almost directly in point to the case under consideration, is Richardson v. City of Miami, 1940, 144 Fla. 294, 198 So. 51, 56. This involved a regulation which established hospital standards equal to those of the American College of Surgeons; and for staff membership, graduation from a Class A Medical School and eligibility for membership in the county medical association. These regulations specifically excluded all other schools of medicine from practice in the municipal hospital other than medical doctors. The Florida court expressly held that the municipality might exclude from practice in the hospital licensed physicians belonging to particular schools of medicine, specifically in that case, osteopathy. It was

there contended that the Florida statute gave osteopaths the authority to practice in all public hospitals. One section of the Florida statute, Acts 1927, c. 12287, § 13, provided as follows:

"'Osteopathic Physicians and Surgeons licensed hereunder shall have the same rights as physicians and surgeons of other schools of medicine with respect to the treatment of cases or holding of offices in public institutions."

The Florida court, at page 56 of 198 So., stated the following:

"The Act as a whole is applicable to osteopathic medicine; it provides for a course of study and a Board whose duty it is to hold examinations and license those eligible to practice. We are unable to read into the Act the contentions here made on the part of counsel for appellant that osteopathic physicians can practice in and have the right and facilities of a municipal hospital extended to their patients."

There is a definite similarity between the Florida statutes considered in the above case and our own, and we are favorably impressed with the decision of the Florida Supreme Court.

Appellants cite six cases which they contend support their position. We have examined each of them and do not feel that they are authority in the instant case, either by reason, in some, of the particular statute involved or by reason that the others deal with the right of suspension of the privilege to use a hospital and relate to procedural matters only.

The case of Stribling v. Jolley, 1953, 241 Mo.App. 1123, 253 S.W.2d 519, is the principal case relied upon by appellants. This case also involved a hospital regulation excluding doctors of osteopathy and the Missouri court struck down the regulation as being in conflict with the statute. However, the great difference in this case and ours is that the Missouri court was considering the Public Hospital Act which contained a provision that it was unlawful to discriminate against any lawful school of medicine in the management of a public hospital. It is apparent that our statute does not contain a similar provision. In addition, in Missouri there was a provision of the statute which provided that a patient in a hospital has the absolute right to the physician of his choice and, in part at least, the Missouri court based its decision on the fact that the regulation would in effect prevent the application of this statute; in other words, that if the regulation were to be effective, that a patient would not be allowed absolute freedom of choice as required by law. Here, again, we do not have language such as this in our Act. We do not feel that this decision is in any sense controlling.

From our examination of the authorities, the act itself, together with its

22

history and the title thereof, we do not believe that it was the legislative intent to authorize osteopathic physicians and surgeons to practice in or to have all the rights and facilities of a public hospital extended to them as a matter of law.

In view of what has been said, therefore, we hold that the regulation herein involved is not unreasonable nor arbitrary and that the same is not contrary to the statutes of the State of New Mexico.

The judgment of the district court will be affirmed, and it is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and MOISE, JJ., concur.