**Rev. John GIACOPELLI, Relator,**

v.

**Hon. Lewis W. CLYMER, Respondent.**

**No. KCD 27773.**

Missouri Court of Appeals,
Kansas City District.

March 24, 1975.

Motion for Rehearing and/or Transfer
Denied March 31, 1975.

Michael J. Drape, Rodger Walsh, Kansas City, for relator.

M. Randall Vanet, North Kansas City, for respondent.

Before PRITCHARD, C. J., DIXON, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ., and HIGGINS, Special Judge.

TURNAGE, Judge.

Rev. John Giacopelli, hereinafter referred to as the relator, filed his petition for writ of prohibition in this court seeking to prohibit the respondent, the Honorable Lewis W. Clymer, Judge of the Circuit Court of Jackson County, Missouri, from enforcing an order the respondent made by which the Clerk of the Jackson

County Legislature was prohibited from administering the oath of office to relator. This court issued its preliminary writ of prohibition and now makes such writ absolute.

A writ of prohibition was issued by respondent as a result of a petition filed by a registered voter of the Sixth Legislative District of Jackson County, Missouri. In such petition it was alleged relator had been elected at the general election held on November 5, 1974, as a member of the Jackson County Legislature under the Constitutional Home Rule Charter adopted by Jackson County. It was further alleged relator was not a qualified voter of Jackson County for a period of three years preceding the election as required by the Jackson County Charter and questioned his residence in Jackson County for one year preceding his election as was required by the Charter.

The petition named as defendants relator; Bernice Conley, Clerk of the County Legislature; and the members of the Board of Election Commissioners of Kansas City, Missouri and of Jackson County, Missouri. Respondent issued his preliminary writ of prohibition and after a hearing, made such writ absolute. Respondent found relator was not a qualified voter in Jackson County for at least three years preceding his election as required by the Charter and further found his election was a nullity because of such lack of qualification. The writ directed that each of the defendants be forever prohibited and restrained from taking any further action involving Giacopelli being sworn into office.

At the hearing held before respondent, the parties stipulated that relator won the primary and general elections and had the Clerk of the County Legislature not been prohibited, she would have sworn in relator on January 1, 1975, along with the other newly elected candidates. It was thus conceded by all parties that all necessary acts had been performed except for the oath taking by relator in order for him to occupy his seat.

There was no allegation of fraud or any other irregularity concerning either the primary or general elections at which relator received the highest number of votes. The only question presented was his lack of qualification because of his alleged failure to be a qualified voter for three years prior to the election.

■ In determining whether or not respondent had the power to prohibit the Clerk of the County Legislature from administering the oath of office to relator, it is necessary to consider the limited circumstances under which the writ of prohibition may be utilized. The first of these is that the writ will not issue to prohibit purely ministerial acts. State ex rel. Gralike v. Walsh, 483 S.W.2d 70 (Mo. banc 1972). Thus it must be determined whether the administration of the oath of office is a ministerial or judicial act, for if it is only ministerial, then respondent had no jurisdiction to prohibit the County Clerk from administering the oath.

In State ex rel. Green v. Glenn, 9 W.W. Harr. 584, 4 A.2d 366 (Del.Sup.Ct.1939), the court stated "surely the grant of a power to administer an oath is not the grant of an executive or legislative power of government nor is it the grant of judicial power, as the administration of an oath by an officer is a ministerial and not a judicial act."

To the same effect see Coolbeth v. Gove, 108 Vt. 499, 189 A. 858 (1937), and Doughty v. DeFee, 152 S.W.2d 404 (Tex. Civ.App.1941), and 67 C.J.S. Oaths and Affirmations § 5.

■ The Charter does not impose any duty on the Clerk except the bare administration of the oath. There is thus no judicial function which the Clerk fulfils when she administers the oath of office. In this circumstance it is clear the Clerk would be performing nothing more than the minis-

terial duty of administering an oath. The act being purely ministerial, it is equally clear that prohibition is not available to prevent the Clerk from performing this duty.

Respondent argues that this case should not be decided on the basis of whether or not prohibition is the proper remedy by which the qualification of relator may be reached at this time. Relator relies on the *Gralike* case to argue that the administration of the oath should be considered a quasi judicial act just as the act of the Board of Election Commissioners in passing on the qualification of candidates and making a decision of whether or not such candidate meets the requirements prior to placing his name on the ballot. It is apparent there is no similarity in the duties imposed on the Election Board to determine the qualification of candidates in order to decide whether or not the candidate's name should be placed on the ballot and the bare function of the Clerk in this case of administering the oath. The reasoning which led to the decision in *Gralike* does not apply here since the election in this case has already been held and the votes have all been cast and counted. In addition, the Clerk in this case is not charged with any responsibility to make any determination concerning the qualification of candidates, as are the Election Commissioners. Thus the reason for holding the action of Election Commissioners in placing names on the ballot to be quasi judicial is not present in this case.

■ Respondent also argues the writ of prohibition has already been issued and this court cannot prohibit that which has already been done. It was held in State ex rel. Vogel v. Campbell, 505 S.W.2d 54 (Mo. banc 1974) that "[t]he writ is properly invoked to restrain the enforcement of orders beyond or in excess of the authority of a judge and to keep a court within the compass of his jurisdiction". Since respondent exceeded his jurisdiction in mak-

ing the writ of prohibition absolute, it is the proper function of the writ issued by this court to prohibit respondent from enforcing his order.

■ Respondent also argues that appeal would supply relator with an adequate remedy and prohibition from this court would not be proper. It is also stated in *Vogel* that "the right of appeal must be a full and adequate remedy before its availability will preclude resort to prohibition". In this case appeal would be less expeditious and in matters concerning public office it is necessary that such questions be resolved at the earliest possible time. For that reason, appeal would not be a full and adequate remedy in this case.

Respondent further argues that no other case has been found in this State dealing with this precise question. He further states there must be some legal remedy, by whatever nomenclature it may be designated, to grant power to the courts to resolve the question of relator's qualifications at this stage. In State ex rel. Chilcutt v. Thatch, 359 Mo. 122, 221 S.W.2d 172 (Mo. banc 1949) the court considered an action brought after the general election attempting to raise the propriety of the name of a winning candidate having been placed on the ballot. The court pointed out the statutory remedy available for challenging the placement of names on the ballot prior to the election and held that by failure to resort to this remedy any objections to the placement of a name on the ballot made after the election came too late and constituted a waiver of the right to maintain such action at that time.

■ There does not appear to be any distinction between the question of whether or not a party's name has been properly placed on the ballot and the question of whether or not a party is fully qualified to be a candidate. In the case at bar, there was full opportunity and full legal remedy available prior to the election for

the qualification of relator to be fully explored and finally adjudicated. State ex rel. Gralike v. Walsh, *supra*. In this circumstance it can likewise be said that any objections to relator coming after the election is made too late. However, this is not to say that the question of relator's qualifications are yet beyond challenge. The Jackson County Charter confers on the County Legislature the power to determine the qualifications of its members. Thus, the Legislature is possessed of full power to examine and determine relator's qualifications to hold office. Further, at the proper time and in the proper circumstance, relator's qualifications may be the subject of inquiry in a quo warranto proceeding.

Since the order made by respondent exceeded his jurisdiction, the preliminary writ of prohibition is made absolute and respondent is prohibited from enforcing the absolute order made on January 6, 1975. It is so ordered.

PRITCHARD, C. J., DIXON, SWOFFORD, WASSERSTROM and SOMERVILLE, JJ., and HIGGINS, Special Judge, concur.

SHANGLER, J., not participating.