**DONALD S. BRYANT v. THE CITY OF LAKELAND, et al.**

28 So. (2nd) 106                            June Term, 1946
November 26, 1946                                En Banc
Rehearing denied January 22, 1947

152

*Whitaker Brothers, M. H. Edwards, Henry C. Tillman* and *E. E. Calloway,* for petitioner.

*Morris E. White, Cody Fowler, Gordon Petteway, E. Snow Martin, H. N. Casebier, John S. Edwards* and *Richard M. Naulor,* for respondents.

BARNS, Circuit Judge:

The petitioner-complainant filed his bill against the City of Lakeland, et al., the Executive Committee of the Staff of the municipality's hospital and certain other members of the Staff of said "hospital."

To this bill the defendants filed answers and petitioner moved for a temporary mandatory injunction upon the plead-

ings which the chancellor denied and petitioner seeks the reversal of the chancellor by certiorari.

Taking the allegations of the answers as true and the bill as true except where inconsistent with the answers the facts appear to be as hereinafter stated.

The City and the City Commissioners will hereinafter be referred to as the "City," the Regular or General Staff of its hospital will be referred to as the "staff" and the Executive Committee of the "staff" will be referred to as the "committee."

Lakeland's charter, chapter 10754, Acts 1925, concerning hospitals provided:

"Sec. 11. The City Commission shall have power . . . to establish and maintain hospitals and provide for the indigent, sick, afflicted;"

Lakeland's charter, chapter 10754, Acts 1925, provided in relation to the City Manager that:

"Sec. 31. [City Manager] Appointment.—The City Commission shall appoint a City Manager, who shall be the administrative head of the municipal government under the direction and supervision of the City Commission. . . .

"Sec. 32. Powers and Duties.—The City Manager shall be responsible to the City Commission for the proper administration of all affairs of the city, and to that end, his powers are, and they shall be: . . . (C) To exercise control and direct supervision over all departments and divisions of the municipal government under this charter, or which may hereafter be created by the City Commission, . . . "

Section 47 of the same Special Act prescribes the duties and responsibilities of the City Manager of the City of Lakeland in the following language:

"The City Manager, as the administrative officer of the City, shall be the head of each department provided for under the Charter, and shall be responsible for its successful and business-like operation. He shall be the active head of the department of public safety and welfare and public works, which department shall have cognizance of all matters making for the welfare of the community, such as the control of its charitable and correctional institutions, and the management

and supervision of all public improvements, works and undertakings of the City, except as otherwise specifically provided for under this charter."

The organization of the hospital was set up in 1937 under which it likely operated but this organization was not approved by the "City" until 1943. Such will hereinafter be referred to as "Regulations."

The "Regulations" provided for a "Regular Staff" as follows:

"(A)  The Regular Staff shall consist of those physicians, surgeons and dentists practicing in the City of Lakeland, who have been, or may be, appointed by the Staff Executive Committee as hereinafter provided, and whose memberships have been approved by the City Commissioners."

The Regulations in relation to suspension of members of the staff were as follows:

"(19)  Dismissal from Membership. Suspension. Members of the Staff may be recommended for suspension or dismissal for unprofessional conduct, or for violation of the rules of the Staff, or of the hospital. Charges against Staff members must be in writing to the President of the Staff, who will refer the matter to the Executive Committee for investigation and recommendations, after which a vote of the Staff shall be taken without discussion. A two thirds majority vote by secret ballot shall be necessary for the suspension or dismissal of a Staff member. All Staff members must be notified in writing of such contemplated action at least two weeks prior to the time of taking vote."

"(A)  Executive Committee. The Executive Committee shall consist of five members elected from the Regular Staff at the Annual meeting in December of each year. They shall serve for a period of one year, and their election is subject to the approval or rejection of the City Commissioners . . . Furthermore, it shall investigate any complaints that may arise pertaining to the efficiency of the hospital, or to irregularities of Staff Members or other attaches of the hospital, and shall present a report of its activities and accomplishments at each staff meeting, after having submitted a copy thereof to the City Manager."

In September 1944 the City approved certain forms for application by and for permits granted to physicians to practice in the hospital.

In the application the applicant on November 15, 1944 stated:

"I hereby make application to the City Commission of the City of Lakeland, Florida for permit to practice in the City of Lakeland hospital.

"I agree to abide by the rules and regulations of the Medical Staff as approved by the City Commission.

"I also agree to keep accurate and up-to-date records of patients under my care and complete their records within seventy-two hours after discharge of patient.

"I also agree to attend seventy-five per cent of the meetings of the staff."

The permit issued to the petitioner read:

"Dr. Donald S. Bryant, you are hereby permitted to practice in Morrell Memorial Hospital, owned and operated by the City of Lakeland, Florida, under the following conditions:

"(1)    That you abide by the rules and regulations of the Medical Staff as approved by the City Commission;

"(2)    That you keep patients' records accurate and up-to-date, and complete patient's record within seventy-two hours after discharge of patient;

"(3)    That you attend seventy-five percent of the meetings of the staff;

"(4)    That you cooperate in every way possible to maintain the operation of the hospital at the highest standard possible.

"Approved by the City Commission of the City of Lakeland on this 23rd day of January, 1945."

On November 1st 1945 the City Manager issued the following directions to the "Staff";

"TO ALL STAFF MEMBERS:

"Please be advised that beginning on the above date the supervisor of each floor has been instructed not to permit any patient to be taken to surgery unless the following is recorded on the patient's chart:

"1.   A complete physical examination

2.   Preoperative diagnosis

3.   Laboratory report

"Also on all cases of Therapeutic Abortion, there must be recorded two consultations with other physicians, one of which must be an obstetrician.

"This matter was brought up for discussion at a meeting of the Executive Committee of the Medical Staff held October 31, 1945, and motions made, seconded and carried that the above ruling be enforced."

On January 16, 1946 the Superintendent of the hospital notified petitioner of a meeting on that day of the executive committee and urged his attendance as it was of importance to him, which meeting he attended. The meeting was concerning petitioner and his non-compliance with the regulations. The executive committee met again on February 12, 1946 but petitioner did not attend although he was invited.

On March 8, 1946 the committee held another inquisitorial meeting and petitioner was invited to attend but declined, stating that the committee could do as it pleased.

On March 12, 1946 formal charges were given petitioner, and the executive committee at a meeting on that day attended by petitioner, voted to allow petitioner's request for 48 to 72 hours in which to answer charges and present witnesses, and set March 15, 1946 at 8:00 o'clock P. M. for further hearing.

Notwithstanding the extension granted petitioner on March 12, the committee made its report of charges against petitioner but it was explained to the petitioner that although notice to the staff for the meeting of March 26 had been sent out that the executive committee would gladly hear any explanation he wished to make or witnesses he had, and if the charges in view of his explanation were not justified, the committee's recommendation to the staff would be withdrawn.

The petitioner did not attend the meeting scheduled for March 15.

On March 26, 1946 after two weeks' notice the staff voted to recommend to the City Commissioners the indefinite suspension of petitioner. This action of the staff was on the

report of the executive committee and no argument or evidence was permitted of petitioner.

On March 27, 1946 the staff advised the City Commissioners that it recommended to the commission that petitioner be indefinitely suspended from the staff for repeated unprofessional conduct.

The staff at the meeting of the commission called for the consideration of the suspension of petitioner on April 4th, 1946, advised the commission by letter of:

(1) the apparent irregularities in the records of a patient of petitioner;

(2) the various meetings of the committee concerning petitioner, above enumerated;

(3) the terms of petitioner's application to practice in the hospital and the permit granted petitioner by the commission.

The City Attorney made a report to the commission similar in substance to that made by the staff.

On April 4, 1946 the City Commission met for the purpose of determining whether or not to suspend the petitioner from the staff of said hospital. The petitioner had been notified of this meeting and was requested to attend. He did not attend personally but was represented at the hearing by counsel, who read to the City Commission a letter. The letter informed the City Commission that petitioner had filed suit to secure such relief as it is possible for the court to allow under the law but asked for no action by the City Commission; that petitioner had before that date filed a suit for malicious conspiracy against all the defendants named as respondents to this suit, claiming damages in the sum of $250,000.

After the letter signed by the attorneys for the petitioner had been read by them, they were asked if they had any further statement to make, or if they wished to present any thing regarding the merits of petitioner's case but they had nothing to say and left the meeting. The City Commissioners then voted to approve the recommendations of the staff and voted to suspend the petitioner indefinitely from the staff of the said hospital.

It is not incumbent upon the city to maintain a hospital for the private practice of medicine nor does a physician have

a constitutional or statutory right to practice his profession in the City's hospital. See Hayman v. City of Galveston, 273 U.S. 414, 47 S. Ct. 363, 71 L. Ed. 714; Newton v. Board of Commissioners of Weld County, 86 Colo. 446, 282 P. 1068; Green v. City of St. Petersburg, 154 Fla. 339, 17 So. (2nd) 517.

It is well recognized that reasonable rules and regulations may be prescribed concerning qualifications of physicians permitted to practice in public hospitals. Richardson v. City of Miami, 144 Fla. 294, 198 So. 51; Green v. City of St. Petersburg, supra.

It likewise follows that reasonable rules and regulations may be imposed upon physicians concerning their practice within the City's hospital. Henderson v. City of Knoxville, 157 Tenn. 477, 9 S.W. (2nd) 697, 60 A.L.R. 652.

The management of the affairs of the City's hospital was in the exercise of a proprietary or corporate capacity as distinguished from one governmental in nature. See Green v. City of St. Petersburg, supra.

The proceedings before the City Commission was in the exercise of an administrative function relating to the proprietary interest of the City in its hospital, to-wit, the management and control.

The hearing before the commission might have been more complete but administrative action concerning suspension of petitioner's privileges does not have to measure up to the standards of judicial process relative to one's rights or property in order to satisfy the requirement of due process of law.

Even though the hospital be a public hospital petitioner as a physician had no right (per se) to practice in the hospital, it being a privilege rather than a right.

The City Commission does not have the right to exercise its power in an unreasonably arbitrary and capricious manner without such being subject to judicial review, but in the case presented to the chancellor such behavior was not made to appear.

Certiorari denied.

CHAPMAN, C. J., TERRELL, BROWN, BUFORD, THOMAS and ADAMS, JJ., concur.