148 So.2d 1 (1962)
NORTH BROWARD HOSPITAL DISTRICT et al., Appellants,
v.
Von D. MIZELL, Appellee.
No. 31742.
Supreme Court of Florida.
December 21, 1962.
*2 Michael K. Davis, of Watson, Hubert & Sousley, Fort Lauderdale, for appellants.
Hugh S. Glickstein, Fort Lauderdale, for appellee.
DREW, Justice.
This appeal is from a decree of the Circuit Court for Broward County, Florida, adjudging Section 31 of Chapter 27438, Laws of Florida, Special Acts of 1951, to be invalid on its face under due process clauses contained in Section 12, Declaration of Rights, Florida Constitution, F.S.A., and Section 1, 14th Amendment, U.S. Constitution.
Chapter 27438 created the appellant hospital district and provided in Section 31 as follows:
"Realizing that factors other than professional must enter into the qualifications of those who practice medicine and surgery, the Board of Commissioners of said North Broward Hospital District are hereby authorized and empowered to set up rules, and regulations and by-laws for the operation of the hospital and the hospital staff; the Board of Commissioners is authorized to give, grant or revoke licenses and privileges of staff members for practice in and about hospitals maintained under this Act, so that the welfare and health of patients and the best interests of the hospital may at all times be best served."[1] (Emphasis supplied.)
The governing board of the hospital district, pursuant to this statutory authorization, adopted by-laws providing among other things in Article VI, Section 3:
"The Board of Commissioners reserves the right to remove any member of the medical staff or to deprive any physician or surgeon of the privileges of the hospital whenever in their sole judgment the good of the hospital or the patients therein may demand it."
The appellee physician Mizell, by a board resolution of July 19, 1961, was notified of his suspension from the exercise of surgical privileges effective August 15, 1961, *3 "for the protection of the health and welfare of patients and in the best interests of the hospitals in this District."[2] In this proceeding for injunctive and other relief, Mizell stated that this language of the suspension order was intended to mean that plaintiff "was not competent to continue in the exercise of his surgical privileges and that his work was of an inferior and unsatisfactory quality."
The sole point adjudicated by the decree appealed is that the second sentence of Section 31, Chapter 27438, supra, is invalid and unconstitutional on its face because it "confers an arbitrary power on the board to determine when and how the best interests of the patients and the hospital would be best served." The quoted by-law was likewise deemed invalid and inoperative. The court upon stipulation refrained from any disposition of other issues raised as to procedural due process in the manner of appellee's suspension, and as to the merits of the grounds relied upon by the appellant district and board to sustain the suspension.
The court in its decree concludes that the statute is invalid on its face because it fails to provide sufficiently definite standards for the guidance of the board and staff members affected, the opinion treating at length the question of improper delegation of legislative power.[3] As above noted, however, the constitutional collisions relied on are with the due process clauses, rather than that portion of our organic law vesting legislative power,[4] which is construed to prohibit delegation of the essential legislative function and to permit the exercise of administrative discretion in the performance of quasi-legislative functions only within legislatively prescribed limits. Upon either theory of constitutional invalidity, however, the underlying issues are similar.
As a general rule the conduct of those vested with authority to manage a public hospital, including control of its medical staff, must be "governed by the principles applicable to other public officers."[5] The fundamental requirement controlling such officials, whether engaged in hospital administration or other essentially proprietary activity under governmental auspices, is that their actions, and the enabling legislation under which they act, shall involve the exercise of a reasonable, or judicially reviewable, as opposed to arbitrary discretion,[6] in order to comport with the constitutional concepts of due process and equal protection of the laws. Our decisions establish that public hospitals may be authorized to limit and control staff membership by reasonable rules and regulations, a physician having no constitutional "right (per se) to practice in the hospital."[7] Standards of competence established for any given institution may be higher than or different from those required by the state medical licensing board,[8] and it is clear that the governing body of a hospital may be authorized, in general terms, *4 to suspend medical staff members for infraction of whatever rules it may make for the particular institution. The propriety of such suspensions is tested by judicial review of the reasonableness of the rule in question.
The decree before us suggests, as illustrative of an acceptable rule of action adequate to guide the board, that the statute might provide for exclusions or suspensions for failure to "conform to the accepted standard of practice for the treatment of patients in this district." The limitation stated in Chapter 27438 is that the power of suspension must be exercised to best serve "the welfare and health of patients and the best interests of the hospital." Notice of required standards of performance for physicians is, in our opinion, equally definitive under the latter language. Neither expression differs significantly in meaning from that used in other instances to authorize suspension for "unprofessional conduct."[9]
It is at least arguable that statutes vesting authority in a hospital board to control medical staff membership are essentially distinguishable from and need contain less specific standards than laws delegating power to a professional or occupational licensing board. Even under decisions relating to the latter situation, however, we are of the opinion that Section 31 of Chapter 27438, supra, adequately states a standard by which the propriety of exclusions or suspensions of physicians from hospital staffs might be measured, and that the court erred in granting injunctive relief on the sole ground that the act showed on its face a fatal insufficiency.
The usual construction of such a delegation of discretionary power is that the discretion to be exercised is a reasonable or judicially reviewable discretion, and the language of the statute, read in context, supports this view. Even the more stringent expression of the by-law in question may under our cases[10] be construed, we think, as contemplating a determination and a judicially reviewable determination by the board based on a reasonable relationship to the objective standard of the "welfare and health of patients and the best interests of the hospital," rather than vesting an arbitrary or uncontrolled power to determine, without regard to demonstrable facts, what shall serve or promote the health and welfare of patients and best interests of the hospital.
Appellee, as shown by his complaint, understood the statutory language incorporated in the suspension order against him as making a charge of professional incompetence. One manner of expression is not materially better than another in this situation to notify the board and staff of standards to be enforced. An exception from the strict requirements of legislative prescription is often recognized in the area of determination of personal fitness.[11] *5 There is at least equal difficulty in precise definition of professional fitness for staff membership in any given institution or group if, as already adjudicated, public as well as private hospitals are to be allowed latitude in enforcing standards of proficiency above those required for licensing. Detailed description of prohibited conduct is concededly impossible, perhaps even undesirable in view of rapidly shifting standards of medical excellence and the fact that a human life may be and quite often is involved in the ultimate decision of the board.
The decree is reversed and the cause remanded for disposition of the independent issues raised below as to sufficiency of procedural due process accorded by the board's rules and actions, and as to proof of facts reasonably requiring suspension in the interest of patient health and welfare.
It is so ordered.
TERRELL, Acting C.J., THOMAS, THORNAL, O'CONNELL and HOBSON (Ret.), JJ., and WALKER, Circuit Judge, concur.
NOTES
[1] Sec. 31 of the act also provides:

"* * * Privileges of staff membership and appointments thereto may be authorized or granted by the Board of Commissioners and shall be made for a period of one (1) year or to the end of the fiscal year of the hospital. All applications for staff appointments must be by medical doctors, commonly known as `M.D.s', duly licensed to practice materia medica in the State of Florida, who must be members in good standing of accepted County medical societies of the State of Florida. It shall be the duty of the said staff of the hospital to organize, in the manner prescribed by the Board of Commissioners of this District, so that there shall be a rotation of service among the members of said staff to give proper medical and surgical attention to indigent sick, injured or maimed who may be admitted to said hospital for treatment, and no member of said staff attending such indigent patient shall receive any compensation for services. The Board of Commissioners of the said District is further authorized and empowered to set up rules and regulations for the control of all professional and unprofessional employees of the hospital, which terms shall include nurses on general duty or on private duty attending patients, and all parties in the hospital, either as employees or in any manner in attendance of patients."
[2] The resolution provided also:

"* * * this Board * * * shall furnish the doctors concerned with the reasons for the denial of surgical privileges upon request by the doctors for this information.
"Be it further RESOLVED that any doctor concerned may at any time request a hearing before this Board to show cause why this suspension of privileges should be revoked and his surgical privileges be fully or partially restored."
[3] Citing Sec. 12, Deel.Rights, Fla. Const., and Sec. 1, Amend. XIV, U.S.Const.
[4] Art. III, Sec. 1, Fla. Const., F.S.A.; 1 Fla.Jur., Admin.Law Sec. 36-38.
[5] 26 Am.Jur., Hospitals, Sec. 8, 9.
[6] Bryant v. City of Lakeland, 158 Fla. 151, 28 So.2d 106. For the rule of absolute discretion vested in private hospital control of medical staff see West Coast Hospital Ass'n v. Hoare, Fla. 1953, 64 So.2d 293.
[7] Ibid.
[8] Dade County v. Trombly, Fla.App. 1958, 102 So.2d 394; Green v. City of St. Petersburg, 154 Fla. 339, 17 So.2d 517.
[9] Bryant v. City of Lakeland, note 6 supra, 28 So.2d at p. 107. The case of Barrow v. Holland, Fla. 1960, 125 So.2d 749, referred to in the decree below, involved a statute which necessarily, and expressly, required promulgation of specific administrative rules to accomplish the statutory mandate.
[10] Levine v. Hamilton, Fla. 1953, 66 So.2d 266.
[11] "The general rule, which requires an express standard to guide the exercise of discretion is also subject to the exception that where it is impracticable to lay down a definite comprehensive rule, such as where regulation turns upon the question of personal fitness, or where the act relates to the administration of a police regulation and is necessary to protect the general welfare, morals, and safety of the public, it is not essential that a specific prescribed standard be expressly stated in the legislation. In such situations the courts will infer that the standard of reasonableness is to be applied. Other cases in such situations recognize the existence of the necessity of a prescribed standard but also recognize that in such cases a more general or less definite grant of authority is necessary." 1 Am.Jur.2d, Admin.Law 116, pp. 922, 923. Cf. Delta Truck Brokers, Inc. v. King, Fla. 1962, 142 So.2d 273, 275.