189 So.2d 198 (1966)
Jack TAYLOR, Jr., et al., Appellants,
v.
W.S. HORN, D.O., Appellee.
No. 6392.
District Court of Appeal of Florida. Second District.
July 27, 1966.
Rehearing Denied August 12, 1966.
Gilbert A. Smith and Dewey A. Dye, of Dye, Dye & Smith, Bradenton, for appellants.
James M. McEwen, of Gibbons, Tucker, McEwen, Smith & Cofer, Tampa, for appellee.
KANNER, Judge (Ret.).
Dr. W.S. Horn, plaintiff-appellee, filed an amended complaint in equity against the defendants-appellants as members of the Board of Trustees of Manatee Veterans *199 Memorial Hospital of Manatee County directed to their denial of use by him of the hospital's facilities for treatment of his patients because of the following bylaw and rule which has the effect of excluding osteopaths from practice in the hospital:
"Article 3, Section 1: Qualifications
"The applicant for membership in the medical staff shall be a graduate of a recognized medical school, approved and accredited by the American Medical Association, legally licensed to practice medicine in the State of Florida, and qualified for membership in the Manatee County Medical Society, and practicing in Manatee County."
Upon motion of appellants to dismiss the complaint for failure to state a cause of action and for want of equity, the chancellor entered a mere order of denial, from which this appeal ensued.
From the averments, it appears that appellee is an osteopathic physician and surgeon, qualified and licensed to practice as such in Florida, and has the same rights as physicians and surgeons of other schools of medicine with respect to treatment of cases. He has attained eminence and recognition in his profession, has practiced continuously in Manatee County since 1946, and was permitted to treat his patients in a County Home and Hospital which the county maintained and operated beginning approximately in 1924. The Manatee Veterans Memorial Hospital is a public institution supported by the taxpayers of the county and since its establishment is the only hospital in the county to which appellee might take his patients.
Factually, the complaint further alleges that in 1948 a charter was granted to a group of citizens for formation of the Manatee Veterans Memorial Hospital Association, which conducted a campaign for funds and later turned them over to the county for use in constructing a hospital; also in 1948 certain individuals by lease donated lands to the county for the hospital site. It was determined that legislation be prepared and sought authorizing bonds, the proceeds to be used, with the public subscriptions and the real property mentioned, to construct a public hospital. In June of 1949, Chapter 25995, Special Acts of 1949, Laws of Florida, was enacted authorizing the board of county commissioners to establish, operate, and maintain a public hospital, to conduct a referendum for bonds, accept donations and grants to aid in the financing of construction and operation, and authorizing appointment by the county commissioners of a board of trustees for administration of the hospital. Thereafter, the bonds were validated resulting in court decree in 1950; and the hospital was constructed. The trustees then appointed adopted the subject bylaw, which was in force when appellee first applied for staff membership in 1953. That application and others made in 1961 and 1963 by appellee were rejected solely because of the regulation.
Three laws are alleged, Chapter 10898, Special Acts of 1925; Chapter 155 F.S.A. as amended; and Chapter 25995, the 1949 special enactment above mentioned, each extending authority for creation thereunder of a public hospital, for issuance of bonds, and appointment of hospital trustees, and each providing for the administration or management of a hospital or hospitals to be constructed under it. The three enactments each specified that the public county hospital established under it should be for the benefit of the inhabitants of the county.
Provisions as to management under the acts are alleged. The 1925 enactment provided in section 17:
"In the management of such public hospital no discrimination shall be made against practitioners of any school of medicine recognized by the Laws of Florida, and all such legal practitioners shall have equal privileges in treating patients in said hospital."
*200 Chapter 155.18 F.S.A. as amended in 1961 reads:
"The board of trustees of any hospital organized under this chapter is authorized to promulgate rules and regulations governing the granting and revoking of privileges to treat patients in the hospital. Such rules shall provide that only those persons licensed to practice medicine and surgery, i.e., medical doctors and osteopathic physicians, may be granted privileges to treat patients in the hospital."
The 1949 special act provided in section 8:
"The board of trustees shall make and adopt such by-laws and rules and regulations for their own guidance and for the government of the hospital as may be deemed necessary or expedient for the economic and equitable conduct thereof, not inconsistent with this act, or the ordinances of the municipality in which such hospital is located."
Section 16 of the 1949 special act is additionally alleged:
"Nothing contained in this act shall be construed as preventing the issuance of bonds or other obligations of Manatee County for the purpose of acquiring or constructing public hospitals or buildings to be used in connection therewith under the authority of any other law, it being intended that the powers conferred by this act shall be cumulative to, and not exclusive of, the powers vested in said county and its board of county commissioners by the provisions of any other law."
It is further averred that the Manatee Veterans Memorial Hospital is in existence under and by virtue of a combination of the three above mentioned legislative enactments and that under the Florida laws and under the constitutions of Florida and the United States, the rule is violative of appellee's rights, deprives him of due process and equal protection of the laws, is an unreasonable, arbitrary, discriminatory, and monopolistic regulation, prohibits his patients from making use of the hospital, although they are taxpayers, unless they select a medical doctor to treat them, permits the hospital to select a doctor for the patient, and constitutes an improper delegation of power. The prayer of the complaint in effect is rooted in the things alleged as predicate for its objective, or the striking down of the bylaw and prohibition of its enforcement against appellee.
Appellants contend that the Manatee Veterans Memorial Hospital was authorized by and constructed under the 1949 special act, that its governing board has the power to adopt valid rules and regulations limiting staff membership and hospital privileges to one school of medicine, and that the rule which it adopted is valid and reasonable.
We turn first to the matter of the controlling statutory authority. Appellee takes the position stated in his complaint that adoption of the rule is precluded because of asserted combination of the mentioned laws. It is not made to appear, however, that any bonds were issued or any hospital constructed under either the 1925 special act or the general act, Chapter 155. The allegations reveal, on the other hand, that the Manatee Veterans Memorial Hospital was constructed and is being administered under authority of the special act of 1949. Each of the enactments concerns a hospital to be established or organized under it. Since, therefore, neither the 1925 special act nor Chapter 155 was utilized in bringing into being the Manatee Veterans Memorial Hospital, neither section 17 of the former nor the 1961 amendment of the latter is rendered effective with respect to management by the trustees of the internal affairs of that hospital.
This being so, it follows that neither does the language of section 16 of the 1949 act accomplish this result. This is a complete act, and the allegations show that it was planned, sought, enacted into law, and used for the purposes expressed in its title and body, these purposes being to establish, operate, and maintain a public hospital and to provide for its management; to construct *201 buildings to be used for such purposes and purposes incidental thereto, to issue bonds, to accept grants and donations, and to do other things connected with operation and management of the particular hospital authorized by the act. The county commissioners proceeded under its authority in constructing, operating, and maintaining the Manatee Veterans Memorial Hospital; and the trustees, in administering the internal affairs of that hospital, acted pursuant to their statutory grant of authority prescribed in section 8. Section 16 of this act consists of a single sentence, the subject matter of which, by its main part or independent clause, is issuance of bonds or other county obligations for acquisition or construction by the county of public hospitals or buildings to be used in connection therewith under the authority of any other law. By use of the words, "cumulative to, and not exclusive of," in the subordinate phrasal portion of the single sentence which comprises section 16, it plainly was not meant that section 17 of the 1925 act or the 1961 amendment of Chapter 155.18 could supplant or be substituted for the direct grant of power to the trustees in section 8 of the 1949 act, under which act they were appointed and are functioning and by which the hospital came into being.[1]
We conclude that there is no basis to support appellee's position that adoption of the rule by the trustees is precluded because of claimed combination of laws as alleged.
We consider next the question directed to validity of the bylaw or rule. The decisions of our supreme court have established that reasonable rules and regulations may be prescribed concerning the qualifications of physicians permitted to practice in public hospitals. Bryant v. City of Lakeland, 1946, 158 Fla. 151, 28 So.2d 106; Green v. City of St. Petersburg, 1944, 154 Fla. 339, 17 So.2d 517; Dade County v. Trombly, Fla.App. 1958, 102 So.2d 394; further, that a physician has no organic right per se to practice his profession in a public hospital, this being a privilege rather than a right. North Broward Hospital Dist. v. Mizell, Fla. 1962, 148 So.2d 1; Bryant v. City of Lakeland, supra.
Although there is a division of judicial opinion upon the subject, our supreme court has also recognized that licensed physicians belonging to particular schools of medicine may be excluded from practice in a public hospital. Richardson v. City of Miami, 1940, 144 Fla. 294, 198 So. 51; see 24 A.L.R.2d Annotated, pages 858-860. Appellants rely upon this case as controlling.
The effect of the protested rule,[2] in the Richardson case, as here, was to exclude from practice in a public tax supported hospital and from staff membership an osteopathic physician duly licensed and qualified under state laws relating to his profession. There, the bylaw required, for staff membership, graduation from Class A *202 medical schools with a degree of M.D. and eligibility for membership in the county medical association, while the present bylaw prescribes that applicants for the staff be graduates of recognized medical schools approved and accredited by the American Medical Association and be qualified for membership in the county medical society. As here, the applicable legislation authorized creation of a board of trustees which, in turn, was empowered to establish bylaws, rules, and regulations for government of the hospital. It was contended that the regulation was unreasonable, arbitrary, discriminatory, deprived the plaintiff of due process and equal protection of the laws, and that it was promulgated to exclude osteopaths from competing with allopaths in treatment of cases in the hospital. It was also asserted that the rule violated a statute providing that osteopathic physicians and surgeons licensed under it should have the same rights as physicians and surgeons of other schools of medicine with respect to treatment of cases. Both contentions were rejected, the supreme court citing and quoting extensively from the cases of Hayman v. City of Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714, and Newton v. Board of Com'rs of Weld County, 1929, 86 Colo. 446, 282 P. 1068, where the United States Supreme Court, as to a city hospital, and the Colorado supreme court, as to two county hospitals, determined that no rights or immunities had been violated under either the federal or state constitutions by a regulation excluding osteopaths. In the Richardson case, the supreme court quoted from Hayman in part as follows:
"* * * Under the Texas Constitution and statutes, anyone who shall `offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method, or to effect cures thereof' is a physician and may be admitted to practice within the state. * * *. We cannot say that a regulation excluding from the conduct of a hospital the devotees of some of the numerous systems or methods of treating diseases authorized to practice in Texas, is unreasonable or arbitrary. In the management of a hospital, quite apart from its use for educational purposes, some choice in methods of treatment would seem inevitable, and a selection based upon a classification having some basis in the exercise of the judgment of the state board whose action is challenged is not a denial of the equal protection of the laws." (Citations omitted.)
The New Mexico Supreme Court in Munroe v. Wall, 1959, 66 N.M. 15, 340 P.2d 1069, upheld dismissal by the lower court of the complaint of two osteopathic physicians for failure to state a cause of action for declaratory relief directed to the legality of a regulation promulgated by the trustees of a public county hospital excluding osteopaths because they were not graduates of schools of medicine approved by the American Medical Association. The court found that the state statute with respect to rights of osteopaths placed them on equal footing with medical doctors but reserved to the governing board of public hospitals full control over the making of regulations to determine who should be on the staff, irrespective of the so-called equal rights given to the osteopaths. Because of the holding of the United States Supreme Court in the Hayman case, the appellants osteopaths did not contend that any constitutional rights had been denied them but yielded to that decision as controlling in that regard. The court cited three cases, the Hayman, Newton, and Richardson cases above mentioned, indicating that it was favorably impressed with the Florida decision and finding it to be almost directly in point. It deemed pertinent and quoted a portion of the Hayman case previously set out in part in this opinion. The regulation was held not unreasonable, arbitrary, nor contrary to New Mexico statutes.
Wallington v. Zinn, 1961, 146 W. Va. 147, 118 S.E.2d 526, was a case wherein the court below had granted temporary injunction *203 against the hospital trustees' denial of use by the plaintiff osteopath of the facilities of the county hospital during a probationary period, after the granting of which probationary use of the hospital by the osteopath the Joint Commission on Accreditation of Hospitals had rescinded accreditation. The court sustained the defendant board's demurrer to the complaint and certified its action to the Supreme Court of Appeals of West Virginia. The plaintiff alleged to the effect that he and many of his patients were county residents and taxpayers, that there was no other hospital in the county for treatment needed for his patients, that denial of use by him of the hospital's facilities constituted discrimination in favor of one school of medicine, and that the patients were entitled to free choice of their physicians; also that the action of the board was unreasonable, discriminatory, and abusive of the board's discretion. The court held that the board was vested with power to exclude an osteopathic physician and surgeon and that its decision to do so in order to regain accreditation was not arbitrary, capricious, or discriminatory.
In Duson v. Poage, 1958, 318 S.W.2d 89, the Court of Civil Appeals of Texas had before it a declaratory judgment of the lower court granting relief sought by the two plaintiffs osteopaths and finding to the effect that, as reputable physicians within the meaning of the county hospital act, they could admit and treat patients in the hospital and could not be excluded because of a rule requiring that a member of the staff be a graduate of a school of medicine approved by the American Medical Association. The two osteopathic physicians, after having been appointed to the staff, were excluded under a rule later passed by the board following the resignation of all the allopathic physicians and the nurses and in view of resultant inability to procure accreditation of the hospital. The court of appeals held the rule invalid as an unlawful delegation by the board of its power; and, stating that it found no cases in point as to this, conditioned its holding upon prospective operation of the regulation whereby the American Medical Association might change its rules and they thus became the test of whether a physician were qualified for the staff. The court, however, specifically found there was nothing to prevent the board from adopting the same standards as are required at a given time by the American Medical Association and held that the rule would be reasonable, since it required high standards of medical training. In directing the judgment to be entered below, the court stated as a part of the direction that "Plaintiffs may be excluded from the Hospital staff because they hold only a degree of Doctor of Osteopathy."
Appellee has cited no Florida case, and neither have we found any, contra to the Richardson case; but he does cite extra-jurisdictional cases. As we have pointed out, there is a difference of judicial opinion on the subject. In this connection, appellee charactierizes as the most important and up-to-date case that of Greisman v. Newcomb Hospital, 1963, 40 N.J. 389, 192 A.2d 817. There, a duly qualified and licensed osteopathic physician and surgeon was held entitled to have his application for membership on the courtesy medical staff of the hospital evaluated on its own individual merits without regard to bylaw requirements of graduation from a school of medicine approved by the American Medical Association and membership in the county medical society, where the nonprofit hospital which constituted a virtual monopoly in the area received funds from public sources and received tax benefits.
We feel that the Richardson case, which is supported by decisions from other jurisdictions, stands as controlling of the situation here presented. In summation, therefore, we hold that the Manatee Veterans Memorial Hospital was established under Chapter 25995, Special Acts of 1949, Laws of Florida; further, we sustain as reasonable and valid and as within the power of the trustees to adopt the requirement of Article 3, Section 1 of the bylaws that "The applicant for membership in the medical staff *204 shall be a graduate of a recognized medical school, approved and accredited by the American Medical Association," deeming that, in view of this determination, we need not say further.
The chancellor should have granted the motion to dismiss the amended complaint. The order of denial is reversed and the cause remanded for entry of order in conformance herewith.
ALLEN, C.J., and LILES, J., concur.
NOTES
[1] It is noted that the 1925 net prescribes "no discrimination" against practitioners of any school of medicine recognized by the laws of Florida. Under the general law, section 18 as amended in 1961, rules which trustees are authorized to promulgate "shall provide that only * * * medical doctors and osteopathic physicians, may be granted privileges to treat patients in the hospital." So under this amendment, because of use of the word "may", there would be the question of permissiveness to the trustees as to granting of hospital privileges to osteopathic physicians. We have not decided this question, since we have held that the hospital here concerned was not "organized under this chapter" as specified by the 1961 amendment.
[2] "* * * the qualifications for membership on the Staff are those physicians permitted to practice therein, shall be based on ethics, education, experience, character and loyalty. They should be graduates of Class A Medical Schools with a degree of M.D. and eligible for membership in the Dade County Medical Association, and all other practitioners of any form of medicine except that as outlined above, are heresy excluded from the privilege of practicing medicine in the Jackson Memorial Hospital"