QUESTION:
May rules and regulations promulgated by a hospital existing under Ch. 155, F. S., require that physicians, as a condition to being granted or continuing to hold the privilege of treating patients in such hospital, file proof that they have in fore professional liability coverage in an amount established by the board of trustees?
SUMMARY:
A hospital existing under Ch. 155, F. S., may promulgate rules and regulations requiring physicians, as a condition to being granted or continuing to hold the privilege of treating patients in such hospital, to file proof that they have in force professional liability coverage in an amount established by the board of trustees. The amount that a physician may be required to carry, however, is apparently limited to $100,000 when a physician elects to participate in a new statutory scheme permitting him to limit liability to that amount by participating in the `Florida Patients' Compensation Fund.'
The Seminole Memorial Hospital is a county hospital organized and existing under the authority of Ch. 155, F. S. The board of trustees of the hospital is statutorily authorized to promulgate rules and regulations concerning the privilege of treating patients in the hospital. Section 155.18 provides:
 The board of trustees of any hospital organized under this chapter is authorized to promulgate rules and regulations governing the granting and revoking of privileges to treat patients in the hospital. Such rules shall provide that only those persons licensed to practice medicine and surgery, i.e., medical doctors and osteopathic physicians, may be granted privileges to treat patients in the hospital. Such doctors and physicians may retain their privileges so long so they comply with the rules and regulations of the board of trustees.
As I read the statute, it grants to the board a wide latitude of authority to regulate the conditions under which physicians will be allowed to practice in the county hospital. I interpret the second sentence quoted above to mean that at a minimum such rules must require that all physicians permitted to practice in the hospital be licensed but that the board may adopt additional regulations as it sees fit in regard to granting to physicians the privilege of treating patients in the hospital. Certainly, this is not to suggest that the board possesses unbridled discretion; rather, the board, pursuant to its enabling legislation, may exercise reasonable, judicially reviewable discretion which comports with the constitutional guarantees of due process and equal protection of the laws. It is, however, settled law that a physician has no unqualified constitutional right to be granted staff privileges in a public hospital merely because he is otherwise licensed to practice medicine. North Broward Hospital District v. Mizell, 148 So.2d 1 (Fla. 1962); Taylor v. Horn,189 So.2d 198 (2 D.C.A. Fla., 1966); Monyek v. Parkway General Hospital, 273 So.2d 430 (3 D.C.A. Fla., 1973).
Assuming, of course, that the malpractice insurance requirement you refer to is to be applied equally, without distinction or discrimination, to all staff physicians who seek to practice in Seminole Memorial Hospital, the question essentially becomes whether the requirement that a physician be covered by malpractice insurance is a reasonable criterion or standard for admission to practice on the hospital staff. That is, does this requirement bear a reasonable or causal relationship to: the hospital's responsibility to its patients and the hospital's responsibility for providing patients with adequate and reasonable care and treatment; the physician's competency and skill or proficiency; and the preservation and protection of the health, safety, welfare, and well-being of the physician's patients? In my view, these questions are to be determined initially by the hospital board of trustees, which is charged by the statute with promulgating regulations governing the privilege of practicing in the hospital. Hence, any rule or regulation duly adopted and promulgated by the board of trustees and the enabling legislation pursuant to which it is adopted is prima facie valid and, until declared otherwise by a court of competent jurisdiction, continues to govern the admission of physicians to the hospital staff. It should be noted that in North Broward Hospital District v. Mizell,148 So.2d 1 (Fla. 1962), the Supreme Court of Florida held that a statute authorizing a hospital district board of commissioners to give, grant, or revoke staff members' licenses and privileges for practice in public hospitals in the district so that the patients' welfare and health and the best interests of the hospital might at all times be best served was not an invalid denial of due process or an improper delegation of legislative power.
A discussion of several cases in this area may help to delineate the permissible scope of regulation by the board. In a leading case, Sosa v. Board of Managers of the Val Verde Memorial Hospital, 437 F.2d 173 (5th Cir. 1971), the U.S. Court of Appeals for the Fifth Circuit said, regarding the selection procedure for the medical staff of a public hospital:
 It is the Board, not the court, which is charged with the responsibility of providing a competent staff of doctors . . . . The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere. [437 F.2d at 177.]
A short time later, the same court reaffirmed its view that the hospital's governing board is charged with setting standards regarding the privilege of physicians to practice, with the court's function limited to assessing the reasonableness and fairness of such regulations in accordance with the Constitution. Woodbury v. McKinson, 447 F.2d 839 (5th Cir. 1971).
Specifically addressing the case of a physician whose practice privileges were suspended by a hospital for failing to procure adequate malpractice insurance, the federal district court for the Eastern District of Louisiana found such relation valid. Pollock v. Methodist Hospital, 392 F. Supp. 393 (E.D.La. 1975). The court found the regulation to be a reasonable exercise of financial responsibility on the hospital's part, motivated by its concern that otherwise it would be forced to carry the entire burden of a negligent physician's liability. Regarding the amount of insurance the hospital could require, the court said that `the hospital must be afforded wide discretion in setting a proper amount.'
Finally, I would call attention to Ch. 77-64, Laws of Florida, an act relating to medical malpractice. It appears to provide a method by which a physician may limit his liability for medical malpractice to $100,000 by posting a $100,000 bond per claim, proving financial responsibility in that amount by establishing an escrow account, obtaining that amount of medical malpractice insurance, and participating in the `Florida Patients' Compensation Fund' which pays any amount of a medical malpractice claim over $100,000 so long as the other conditions are met. This act would appear to place a limit of $100,000 upon the amount of insurance a hospital could require a physician electing to participate in the program to carry.
Prepared by: Sharyn L. Smith Assistant Attorney General Frank A. Vickory Legal Research Assistant