453 So.2d 519 (1984)
James G. HULL, D.O., et al., Appellants,
v.
The BOARD OF COMMISSIONERS OF the HALIFAX HOSPITAL MEDICAL CeNTER, et al., Appellees.
No. 83-74.
District Court of Appeal of Florida, Fifth District.
August 2, 1984.
*520 Davisson F. Dunlap and William D. Palmer, of Carlton, Fields, Ward, Emmanuel, Smith & Cutter, P.A., Orlando, for appellants.
Harold C. Hubka, Daytona Beach, and Charles M. Daniels, of Daniels, Butman & Pomerantz, P.A., Fort Lauderdale, for appellees.
DAUKSCH, Judge.
This is a timely appeal from a final judgment and an order denying appellant's motion for rehearing. The judgment adjudicated a bylaw of the medical staff at Halifax Hospital Medical Center constitutional and not violative of Section 395.0653, Florida Statutes (1979).
*521 Appellants, doctors of osteopathy located in Volusia County, filed a complaint against appellees, members of the Board of Halifax Hospital, alleging that a bylaw which set forth criteria and eligibility requirements for medical staff membership, was in violation of Section 395.0653, Florida Statutes (1979). Halifax Hospital is a public facility licensed by the state of Florida. Count I of the complaint sought a declaratory judgment that the bylaw enacted by the hospital in 1979, and amended in 1980, was violative of Section 395.0653, Florida Statutes. Count II sought a temporary and then permanent injunction against the bylaw and prayed for damages. Count III alleged a conspiracy by the hospital to prevent competition of appellants with the medical doctors now on staff at Halifax Hospital. Count IV charged that the bylaw violates the right of appellants under Article I, Sections 2 and 9 of the Florida Constitution. The conspiracy charge was dismissed prior to trial.
The trial judge issued an order bifurcating the issues on liability and damages, and ruled that these issues would be tried separately. A non-jury trial was held on the issue of liability. The court entered a final judgment holding that the bylaw did not violate the statutory or constitutional rights of appellants as a class. Furthermore, the court determined that individual claims for damages would be denied because none of the named plaintiffs had exhausted their administrative remedies. Appellants filed a Motion for Rehearing. This motion was denied.
The following is a brief description of some of the facts presented at trial. Appellants (plaintiffs below) are all doctors of osteopathy which comprise roughly one-eighth of all doctors in the Volusia County area. Each plaintiff is a graduate of a school of osteopathic medicine and each is licensed to practice in this state. Appellants have different levels of postgraduate training and are either board eligible or board certified in their specialties by the American Osteopathic Association (AOA) or its respective certifying bodies. Board eligibility with reference to the AOA means the individual has completed specific requirements of the Osteopathic Board and has not yet taken and passed the exam. Halifax Hospital is a regional facility which has some of the best facilities in the area. The hospital provides services and contains equipment that are not available at any of the other local hospitals. Appellants contend that they are precluded from practicing in certain areas of medicine because they do not have access to these unique facilities. They say the hospital offers services in obstetrics, neurosurgery, pediatrics, chemotherapy, and radiation therapy  none of which is available at any other hospital in the area.
The court below specifically found that Halifax Hospital could and did discriminate against osteopaths solely on the basis of their licensure prior to the passage of Section 395.0653, Florida Statutes, in 1979. The 1979 Statute, however, prohibited this type of discrimination and required that hospitals establish one set of criteria and apply it equally to all applicants. In December of 1979, Halifax Hospital responded to the statutory pronouncement and passed the bylaw at issue here requiring that an applicant must hold an unlimited license to practice medicine or osteopathy in this state, and the applicant must also have completed a residency program sufficient to be currently eligible for, or be already certified by, a specialty board approved by the American Board of Medical Specialties (ABMS). The AOA certifying boards and the AMBS boards are totally independent and in some cases the AMBS will certify doctors of osteopathy that have taken AOA certified residencies or internships but in seven specialty areas it does not. This bylaw was amended in March of 1980 so as to permit a doctor of osteopathy (D.O.) to be considered for a position on the medical staff in those cases where specialty residency programs approved by the AMBS would not accept graduates of schools of osteopathic medicine. There was testimony adduced at trial that the above amendment allowed previously ineligible applicants, because of AMBS preclusion, to be *522 considered on the basis of having received equivalent training in spite of the fact that they could not be certified by the AMBS board.
The evidence presented at trial also shows that since the passage of the bylaw, two D.O. applicants have been granted staff privileges at Halifax Hospital and a third is expected to be approved shortly. Prior to the 1979 statute, no doctors of osteopathy had been granted privileges at the hospital. However, it is estimated that there are currently only three D.O.'s that are M.D. board certified and only one osteopath that is M.D. board eligible, out of a possible forty-two D.O.'s within the surrounding area.
Appellants argue that the bylaw adopted by Halifax Hospital setting forth the qualifications for membership on its medical staff specifically discriminates against doctors of osteopathy and is therefore in violation of Section 395.0563, Florida Statutes (1979). Section 395.0563, Florida Statutes,[1] provides in pertinent part:
Use of Hospital and Staff
(1) Any hospital licensed under this chapter in considering and acting upon applications for staff membership or professional clinical privileges shall not deny the application of a qualified doctor of medicine licensed under chapter 458, doctor of osteopathy licensed under chapter 459, doctor of dentistry licensed under chapter 466, or doctor of podiatry licensed under chapter 461 for such staff membership or professional clinical privileges within the scope of his respective licensure solely because the applicant to licensed under any of said chapters.

(2) Nothing herein shall restrict in any way the authority of the medical staff of the hospital to review for approval or disapproval all applications for appointment and annual reappointment to all categories of staff and make recommendations on each to the governing authority, including delineation of privileges to be granted in each case. In making such recommendations and delineation of privileges, each applicant shall be considered on an individual basis pursuant to criteria applied equally to all other disciplines. (emphasis added).
Appellants contend further that by requiring applicants for staff positions to be M.D. board certified or eligible, the hospital has totally eliminated from consideration those osteopaths who practice in specialties which do not allow osteopaths to become board eligible or do not allow osteopaths into their M.D. residency programs. Furthermore, the bylaw precludes most osteopaths from being able to meet the threshold requirements for eligibility since most of them have taken D.O. residency training rather than M.D. residency training. Consequently, it is argued that the bylaw is in violation of Section 395.0653, Florida Statutes, because it discriminates against osteopaths because of their education and training. We do not find these arguments compelling and therefore hold that the Halifax Hospital bylaw is in compliance with the statute.
*523 Prior to the adoption of the 1979 statute, it was permissible for hospitals to routinely exclude osteopaths from their staffs by requiring all staff members to be graduates of medical schools approved by the American Medical Association. See Taylor v. Horn, 189 So.2d 198 (Fla. 2d DCA 1966); Richardson v. City of Miami, 144 Fla. 294, 198 So. 51 (1940); 37 A.L.R.3d 645, 674. However, Section 395.0653, Florida Statutes (1979) was specifically passed to remedy this practice of discriminating against osteopaths solely on the basis of their training. See Hackett v. Metropolitan General Hospital, 422 So.2d 986 (Fla. 2d DCA 1982); Sarasota County Public Hospital Bd. v. Shahawy, 408 So.2d 644, 646 (Fla. 2d DCA 1981). As the judge in the court below stated:
[This Statute] prohibits restriction[s] based on licensure. [It] specifically mandates that a hospital establish one set of criteria, and apply it equally to all applicants, regardless of discipline. As a result, hospitals can no longer deny admission to an applicant because he is a D.O. and not a M.D.
In the case sub judice, the bylaw sets forth standards which the hospital deems are higher than those required for licensure by the state. In an attempt to raise the quality of the health care it accords its patients, Halifax Hospital requires all its doctors to be M.D. board certified or eligible regardless of what type of medical training the doctors engaged in. Appellants contest that the net effect of such a policy is to preclude a large percentage of osteopathic doctors from consideration for staff privileges because of the characterization of their training rather than the quality of their training and thereby violates subsection (1) of Section 395.0653, Florida Statutes (requiring that doctors of osteopathy not be denied hospital staff admission solely due to the fact that they are D.O.'s). Furthermore, appellants allege there are no mechanisms available for an osteopath to convince the hospital that AOA training is equivalent to or better than M.D. training.
The uncontroverted facts presented at trial, however, suggest that the bylaw has had the effect of excluding both doctors of osteopathy and medical doctors equally. In fact, the bylaw has excluded a larger number of medical doctors than it has osteopaths. In addition, prior to the adoption of this bylaw, no osteopath had been admitted on the medical staff at Halifax but, since its enactment, two have been accepted, and a third is expected to join the staff shortly. Clearly then, the bylaw has been applied equally to the doctors of osteopathy and medical doctors and the bylaw is not violative of Section 395.0653(1), Florida Statutes.
Appellants further contend that subsection (2) of the applicable statute (requiring that each applicant be considered on an individual basis pursuant to criteria applied equally to all other disciplines) places a duty on the hospital to consider the qualifications of each applicant regardless of his or her prior training and experience. The trial court disagreed, however, and interpreted this section to mean that it only requires that uniform standards be applied equally. We agree with the trial court. In determining that the threshold requirements of the bylaw were reasonable, and there being no equivalency provision in the 1979 statute, there is no necessity for the hospital to individually determine the nature of an applicant's training when the minimum requirements of the bylaw have not been met. Such a conclusion is unwarranted where, as here, the statute is clear on its face. Therefore, the fact that the hospital did not make a detailed evaluation of every applicant who did not meet the basic minimum requirements of the bylaw does not make the hospital in violation of subsection (2) of Section 395.0653, Florida Statutes.
Appellants also raise the issue that the standards adopted in the bylaw (requiring medical board eligibility or certification) were not found by the hospital to be reasonably related to the quality of health care sought to be provided. There was conflicting testimony in the record regarding *524 the extent to which the board of the hospital compared the training provided by the two disciplines. However, there is more than enough evidence in support of the trial court's conclusion that the criteria adopted by the Board were reasonable and that the hospital acted with the motivation of trying to provide the highest quality health care possible. Appellants' argument that the hospital failed to determine prior to enacting the bylaw that the medical training of medical board certification was inherently superior than the training provided by the osteopathic boards is irrelevant. Clearly, there is no provision in the statute requiring such a determination to be made in deciding what criteria to impose for staff membership. Further, we are impressed by the relatively recent exposure of the number of incidents of malpractice by health care providers, and know that all that can be done by way of improvement and raising of standards can have nothing but a beneficial effect for all concerned; providers of health care as well as recipients.
The trial court did not err in holding that the instant bylaw did not violate subsections (1) or (2) of Section 395.0653, Florida Statutes. The evidence supports the trial judge's determination that doctors of osteopathy applying for staff positions at Halifax Hospital were not denied admission solely because they were D.O.s. Furthermore, the procedure adopted by the hospital to individually evaluate the qualifications of those doctors of osteopathy meeting the threshold requirements of the bylaw were adequate under the statute.
Equally without merit is appellants' contention that the bylaw at issue in its terms and application violates the due process and equal protection clauses of the Florida Constitution. There is no constitutional right recognized in Florida for a physician to practice in a particular hospital. North Brevard Hospital District v. Mizell, 148 So.2d 1 (Fla. 1962); West Coast Hospital Association v. Hoare, 64 So.2d 293 (Fla. 1953). A public hospital also has the right to require a physician to comply with higher standards than those required by the state under its medical licensing statutes. Sarasota Cty. Public Hospital Bd. v. Shahawy, 408 So.2d 644, 645 (Fla. 2d DCA 1981); Green v. City of St. Petersburg, 154 Fla. 339, 17 So.2d 517, 518 (1944); Mizell. Furthermore, the Florida Statutes have accorded hospital boards considerable discretion in making the determination as to what criteria will be required as a precondition for staff privileges. See Shahawy; Mizell. That discretion is limited only by the constitutional requirement "that the standards for privileges be reasonably related to furthering the goal of providing high quality patient care, that the power of the hospital not be exercised in an unreasonably arbitrary and capricious manner and that the decisions of the hospital be subject to judicial review." Shahawy, 408 So.2d at 647.
Under Florida's equal protection analysis, appellants have the burden of showing "that there is no conceivable factual predicate which would rationally support the classification under attack." Florida High School Activities Ass'n. v. Thomas, 434 So.2d 306, 308 (Fla. 1983). In the case at bar, appellants have not shown that the criteria adopted by the bylaw are not reasonably related to furthering the goal of providing high quality patient care. In addition, there is no compelling evidence in the record suggesting that the Bylaw Committee intended to arbitrarily exclude doctors of osteopathy from its medical staff. In fact, there is an appeal process provided by the bylaws themselves which is designed to insure that the decision whether to hire an applicant is not arbitrarily made. Therefore, the hospital's refusal to allow non-eligible and non-certified medical board applicants positions on its staff was not an abuse of its discretion and was not done arbitrarily or unreasonably.
Finally, appellants contend that the bylaw enacted violates their right to contract guaranteed by Article I, Section 9, of the Florida Constitution. The right of doctors of osteopathy to contract with patients is only tangentially implicated in the *525 instant case. The right of the hospital to contract with qualified physicians, however, is directly implicated. Appellants here have no constitutional right to practice their type of medicine in a particular hospital. Bryant v. City of Lakeland, 158 Fla. 151, 28 So.2d 106 (1946); Mizell. The hospital's right to guarantee the quality of its staff so as to protect the financial viability of the hospital outweighs the right of a particular patient to have a particular doctor treat him in a particular hospital. Consequently, the above bylaw does not violate the right to contract which inheres in Article I, Section 9 of the Florida Constitution.
The final judgment and order denying appellant's motion for rehearing is affirmed.
AFFIRMED.
COBB, C.J., and DIAMANTIS, G.N., Associate Judge, concur.
NOTES
[1] This statute has been subsequently changed as of October 1, 1982, and has been replaced by a more comprehensive statute. The newer statute provides:

395.011(2) When a licensed facility requires, as a precondition to attaining staff membership or professional clinical privileges, the completion of, eligibility in, or graduation from any program or society established by or relating to the American Medical Association or the Liaison Committee or Graduate Medical Education, the licensed facility shall also make available such membership or privileges to physicians who have attained completion of, eligibility in, or graduation from any equivalent program established by or relating to the American Osteopathic Association.
The lower court explicitly points out that its Final Judgment only applies to the 1979 statute and makes no findings with respect to the new licensure statute. Most notably, the new statute imposes an equivalency test to determine whether D.O. training can be used to exclude a particular applicant. The change implicitly approves the character of medical training as a valid criterion with which to judge an osteopath's qualifications. We similarly limit our holding to the prior statute.